**In the Matter of GRAND JURY PROCEEDING.**

**Appeal of Marty BARTON.**

**No. 95–1720.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 6, 1995.

Decided Oct. 16, 1995.

Rehearing Denied Nov. 3, 1995.

Ronald A. Niemann, Jack S. Parker, Chris Daniel (argued), Niemann & Parker, Centralia, IL, for Appellant.

Frank J. Marine (argued), Bond Edward Rhue, United States Department of Justice, Organized Crime and Racketeering Section, Washington, DC, for Appellee.

Before CUMMINGS, ROVNER and DIANE P. WOOD, Circuit Judges.

CUMMINGS, Circuit Judge.

Barry Short acted as attorney for appellant Marty Barton in relation to federal grand jury subpoenas issued to Barton in 1991. In his 1994 appearance before the grand jury, Short asserted the attorney-client privilege, refusing to answer five questions regarding the production of documents pursuant to the 1991 subpoena. The district court issued an order granting the government's motion to compel Short's testimony. Barton, as holder of the attorney-client privilege and intervenor in the government's motion, seeks review of the district court's order. We affirm.

## I.

### Facts

In 1991, the United States Department of Labor and a federal grand jury sitting in the Southern District of Illinois began investigating an alleged scheme in which certain union members, including Barton, were paid "retainers" by a lawyer, Stephen Tillery, for referring injured union members to the lawyer. Barton, a layman, maintained throughout that he was employed by the attorney's law firm as an expert in the railroad industry to investigate client matters. Nonetheless, a subpoena duces tecum dated June 26, 1991 was issued to Barton in his personal capacity. The subpoena required production of "Any written correspondence or memorandum between [Barton] and any member, associate or employee of [the law firm], pertaining to any services [Barton] provided to the firm, its members, associates or employees and its clients." Barton moved to quash the subpoena on the grounds that he was the subject of a grand jury investigation and that the Fifth Amendment privilege protected him from producing the documents.

A second subpoena duces tecum was issued to Barton on August 1, 1991, but this time in his capacity as General Chairman of the United Transportation Union. The subpoena sought "Any correspondence sent and prepared by [Barton] in your capacity as General Chairman or Local Chairman, to union members regarding Stephen Tillery" and "Any correspondence received by [Barton] in your capacity as General Chairman or Local Chairman, from Stephen Tillery [and two other members of the law firm]." Barton, through his attorney Short, submitted documents Bates-stamped 1 through 35 in response to the second subpoena on August 16.

The district court on April 23, 1992 granted Barton *Doe* immunity, see *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552, for "the act of producing" documents pursuant to the first subpoena and ordered Barton to produce the documents. Barton, again through Short, delivered numerous documents to the government on May 20. The documents produced included the same documents Bates-stamped 1 through 35 produced under the second subpoena and additional documents stamped 36 through 48.

On July 22, the grand jury returned two indictments, including one against Barton and others for interstate travel in aid of racketeering, mail fraud, and conspiracy. During the trial, the district court relied on the *Doe* immunity to deny the government's motion to admit some of the memoranda produced by Barton as false exculpatory evidence. Barton was acquitted on all counts except two, on which the jury was hung. Thereafter, the grand jury initiated an investigation to determine in part whether the documents, Bates-stamped 1 through 48, concerning Barton's alleged investigative work with the law firm were false and fraudulent.

After the testimony of two witnesses before the grand jury cast at least some doubt on the authenticity of Barton's documents, Short was called to testify. Short was questioned regarding the production of documents under the two subpoenas; he refused to answer five of the questions based on the attorney-client privilege:

> Q. For the purpose of either of those subpoenas did you yourself conduct a search?
>
> A. I did not.
>
> Q. Did you direct someone else to do so?
>
> A. I did.
>
> 1. Q. Whom did you direct?

A. * * * I respectfully decline to answer that question because it would call on me to violate attorney/client privileges put upon me by the State of Missouri.

Q. Did those documents eventually come into your hands?

A. Yes.

2. Q. From whom did you get them?

A. I respectfully decline to answer on the basis of attorney/client privilege.

    *     *     *     *     *     *

3. Q. * * * Did [the person who supplied the documents to you] understand they were given in response to a subpoena?

A. * * * I respectfully decline to answer that based on attorney/client privilege, conversations he had with me.

4. Q. Did that person understand you were to forward them to the Grand Jury in response to a subpoena?

A. Once again I have to respectfully decline to answer that question.

5. Q. Did you tell your client, Mr. Barton, you were going to convey them to the government pursuant to Grand Jury subpoena?

A. Once again I have to respectfully decline to answer based on attorney/client privilege.

Subsequently, the government moved to compel Short's testimony. Barton was allowed to intervene in the matter, and both he and Short submitted memoranda opposing the motion. The district court granted the motion in a written order dated March 7, 1995. The court found that questions 1, 2, and 5 were not covered by the attorney-client privilege, relying principally on *In re Feldberg,* 862 F.2d 622 (7th Cir.1988). According to Chief Judge Mihm, the privilege may have covered the answers to questions 3 and 4, but because Barton and Short failed to request an *in camera* hearing, the court was forced to assume the answers were not privileged. Alternatively, the court held that the government made a prima facie showing under the crime-fraud exception to the attorney-client privilege. The district court also stayed enforcement of the order compelling testimony pending this appeal.

## II.

### Discussion

■ We have jurisdiction under 28 U.S.C. § 1291 to hear an appeal from an order rejecting the assertion of the attorney-client privilege by an attorney and compelling the attorney to testify before the grand jury. *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950; *United States v. Davis,* 1 F.3d 606 (7th Cir.1993).

■ Barton principally argues on appeal that *Feldberg,* relied upon by the district court, is distinguishable from the case at bar. We disagree and find that *Feldberg* is controlling. Because we hold that the attorney-client privilege does not cover all five questions asked of Short, we need not address Barton's second argument that the district court improperly found a prima facie case under the crime-fraud exception.

*Feldberg, supra,* presented this Court with a situation comparable to the instant case. Feldberg was the attorney for World Sports and its president. Both were subjects of a grand jury investigation of amateur athlete contracts. A subpoena was issued for the production of all contracts between World Sports and college football players. Feldberg turned over 51 such contracts to the grand jury; when the grand jury made a further request, Feldberg produced seven additional contracts. The additional contracts, which were dated subsequent to the initial production by Feldberg, revealed that World Sports was engaged in a fraudulent post-dating scheme to affect the eligibility of college players. The grand jury, suspecting obstruction of justice, wanted to know why the seven additional contracts were not originally produced in response to the subpoena. The grand jury called Feldberg to testify. When Feldberg asserted the attorney-client privilege in response to questions about the production of documents, the district court ordered Feldberg to answer. World Sports and its president intervened and appealed the order. At issue was the application of

the attorney-client privilege to eight questions:

1. Did you direct someone else to [conduct a search of the files for purposes of gathering the information responsive to this subpoena]?

2. How did you come to [the] understanding [that the 51 names were a complete list of the players under contract]?

3. And to the best of your recollection, what was said [when the president of World Sports talked with Feldberg after receiving the subpoena]?

4. Did you have a conversation with anyone affiliated with World Sports Entertainment in which you told them that you were going to [contact the U.S. Attorney's Office and say you represented World Sports and would handle compliance with the subpoena]?

5. [Feldberg declared his intention not to answer questions regarding the production of the 51 contracts].

6. Did you tell [the president of World Sports and an associate] that you were going to convey these contracts to the Government, with the representation that they were all contracts called for by the subpoena?

7. [D]id you direct anyone to produce such a list [of contracts] for disclosure to the Government?

8. Did you have a conversation in which you asked someone to give those [51 contracts] to you for disclosure to the Government?

*Id.* at 624.

We ultimately remanded the case so the district court could refine its directions about which questions must be answered. Before doing so, though, we stated that questions 1, 7, and 8, dealing only with the search of files, would not reveal legal advice rendered by the firm. Questions 4 and 6 were also not subject to the privilege. Question 3, on the other hand, likely would call for privileged information. We stated that although ques-

tion 5 was not actually a question, the lower court acted rashly in compelling answers to every potential inquiry related to question 5. Finally, we stated that a determination of question 2 would require an *in camera* hearing about the kind of answer that would be given. 862 F.2d at 628.

Based on our analysis of the questions in *Feldberg*, we are confident that the five questions asked of Short do not implicate the attorney-client privilege.[1] Questions 1 and 2 are similar to *Feldberg* questions 1, 7, and 8 in that they deal with whether the attorney "directed someone to search the files; if so, who and how." 862 F.2d at 628. Questions 3, 4, and 5 all involve whether the client or the person collecting the documents knew they were acting pursuant to a subpoena. Accordingly, they call for the same information as questions 6 and 8 in *Feldberg* (and possibly question 4). We therefore affirm the district court's order compelling Short's testimony.

In an attempt to escape *Feldberg*, Barton relies on the fact that Feldberg, unlike Short, served a dual role as both World Sports' attorney and records custodian. He argues that Feldberg's role as records custodian required him to answer questions regarding the document production, quoting from *Feldberg*: "We suppose that a grand jury ... could insist that the corporation's own records custodian ... produce [the documents] personally." 862 F.2d at 628. Barton's argument misses the mark: while a records custodian may be *required* to testify regarding document production, an attorney may be *prevented* from offering the testimony because of the attorney-client privilege. Even if *Feldberg* is distinguishable because Short was not simultaneously a records custodian, the question still remains whether the attorney-client privilege prevented Short from answering the questions. A client does not lose the privilege merely because his attorney serves a dual role.

---

1. The district court noted that Barton and Short should have made an *in camera* submission on questions 3 and 4 to demonstrate the applicability of the attorney-client privilege. Because the answer to those two questions will likely be "yes" or "no," we fail to see the need to determine the content of the forthcoming answers in an *in camera* hearing. Thus we decline to remand for such a submission.

Nonetheless, *Feldberg* did not turn on the attorney's role as records custodian. The rationale of the decision was that, "Since questions about the adequacy of the search do not entail legal advice, the topic is not off limits just because an attorney plays a role." 862 F.2d at 627. If the questions do not entail legal advice, the attorney-client privilege does not come into play—irrespective of whether the attorney is or is not also the records custodian. The privilege is limited to legal advice. 862 F.2d at 627 (citing, *inter alia, Radiant Burners, Inc. v. American Gas Ass'n,* 320 F.2d 314, 319 (7th Cir.1963)). We further stated in *Feldberg* that there "is no need for a privilege to cover information exchanged in the course of document searches, which are mostly mechanical yet which entail great risks of dishonest claims of complete compliance. Dropping a cone of silence over the process of searching for documents would do more harm than good." 862 F.2d at 627. We fail to see how our holding in *Feldberg* could, consistently with our reasoning in that case, be limited to the grand jury testimony of attorneys who also serve as records custodians.

■ Barton's final argument is that to compel Short to testify violates the grant of *Doe* immunity to Barton. We agree with the district court that compelling Short to testify in no way amounts to using Barton's act of producing documents against Barton, which is what *Doe* immunity forbids. In any case, Barton's argument is premature: he may assert a violation of *Doe* immunity if he is charged with an offense related to the grant of immunity.

### III.

#### Motions to Strike

■ Appellant has also filed a motion to strike a supplemental appendix submitted to this Court as well as portions of appellee's brief. Appellee filed a cross-motion to strike documents attached to appellant's motion to strike. We deny appellant's motion for the reason that the documents in the supplemental appendix were before the district court. The documents in question were used during grand jury testimony, were grand jury exhib-

its, or were supplementary materials offered in the district court. We grant appellee's cross-motion to strike because the documents attached to appellant's motion appear nowhere in the trial court's records.

### IV.

#### Conclusion

The order of the district court, insofar as it compels Short to answer the five grand jury questions at issue, is affirmed. Appellant's motion to strike is denied, and appellee's cross-motion to strike is granted.