OPINION EN BANC
BOUDIN, Circuit Judge.
A federal grand jury indicted Jason Pleau on December 14, 2010, for crimes related to the September 20, 2010, robbery and murder of a gas station manager making a bank deposit in Woonsocket, Rhode Island. 18 U.S.C. §§ 2, 1951(a) (robbery affecting commerce); id. § 1951(a) (conspiring to do the same); id. § 924(c)(1)(A), (j)(l) (use of a firearm during and in relation to a crime of violence resulting in death). The federal prosecutor could seek the death penalty but that decision depends on U.S. Attorney General approval after a lengthy process. See, e.g., United States v. Lopez-Matias, 522 F.3d 150, 155 (1st Cir.2008).
Pleau was in Rhode Island state custody on parole violation charges when the federal indictment came down, and is now serving an 18-year sentence there for parole and probation violations. To secure Pleau’s presence in federal court, the federal government invoked the Interstate Agreement on Detainers Act (“IAD”), Pub.L. No. 91-538, 84 Stat. 1397 (1970) (codified as amended at 18 U.S.C. app. 2 § 2). The IAD provides what is supposed to be an efficient shortcut to achieve extradition of a state prisoner to stand trial in another state or, in the event of a federal request, to make unnecessary the prior custom of a federal habeas action. See IAD art. I.
In this instance, Rhode Island’s governor refused the IAD request because of his stated opposition to capital punishment. United States v. Pleau, No. 10-184-1S, 2011 WL 2605301, at *2 n. 1 (D.R.I. June 30, 2011). The federal government then sought a writ of habeas corpus ad prosequendum from the district court to secure custody of Pleau — this being the traditional method by which a federal court obtained custody. E.g., Carbo v. United States, 364 U.S. 611, 615-16, 618, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961). Codifying common law practice, the statute authorizing *4 the writ empowers a federal court to secure a person, including one held in state custody, where “necessary to bring him into [federal] court to testify or for trial.” 28 U.S.C. § 2241(c)(5).
Pursuant to the habeas statute, the federal district court in Rhode Island ordered Pleau to be delivered into federal custody to answer the federal indictment. Pleau, 2011 WL 2605301, at *4. Pleau both appealed and, in the alternative, petitioned this court for a writ of prohibition to bar the district court from enforcing the habeas writ. A duty panel of this court, over a dissent, stayed the habeas writ, and an expedited appeal followed in which the Rhode Island governor was granted belated intervention. Ultimately, the same panel, again over a dissent, held in favor of Pleau and the governor.
On petition of the federal government, the full court granted rehearing en banc; the en banc court vacated the panel decision but left the stay in effect until resolution of the en banc proceeding. We consider first the propriety of review of the district court’s grant of the writ given that the federal criminal case against Pleau remains pending. Piecemeal appellate review of trial court decisions is—with few, narrowly interpreted exceptions—not permitted, especially in criminal cases. United States v. Kane, 955 F.2d 110, 110-11 (1st Cir.1992) (per curiam).
Nevertheless, we need not wander into the thicket of Pleau’s own debatable standing to appeal from a -writ merely commanding his presence to answer criminal charges,[1] nor explore the possible use of the “collateral order” doctrine to rescue the interlocutory appeal. Governor Chafee, in an order not disturbed by the grant of the en banc rehearing petition, was allowed to intervene. And as a party to the case, he is entitled to argue for an advisory writ of prohibition, which suffices to bring the merits of the dispute to us for resolution.
While writs of mandamus and prohibition—two sides of the same coin with interchangeable standards, United States v. Horn, 29 F.3d 754, 769 n. 18 (1st Cir.1994)—are generally limited to instances of palpable error threatening irreparable harm, e.g., In re Pearson, 990 F.2d 653, 656 & n. 4 (1st Cir.1993), “advisory mandamus” is available in rare cases; the usual requisites are that the issue be an unsettled one of substantial public importance, that it be likely to recur, and that deferral of review would potentially impair the opportunity for effective review or relief later on. Horn, 29 F.3d at 769-70.
A state’s refusal to honor a federal court writ is surely a matter of importance; and, if they could, states would certainly mount more such challenges. Whether Pleau would be prejudiced if review now were refused is less clear; but the governor could hardly obtain meaningful relief following a federal conviction of Pleau. And neither the federal government nor the other parties dispute that the issue can be considered on advisory mandamus. So we turn to the merits, which present two interrelated but sequential questions.
The first is whether the IAD statute precludes the federal government’s use of the habeas writ, after a detainer has *5 been filed and an initial IAD request has been rejected, to convert a request into a command. The second question is whether in such a case the habeas statute compels the state governor to deliver the prisoner or whether compliance is merely a matter of comity that the governor may withhold. This is the way the Supreme Court structured the issues in United States v. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), which resolves the first question and frames the second in a way that clearly dictates the answer.
Of two different federal appeals disposed of by Mauro, only one is directly pertinent to Pleau. The federal government invoked the IAD by lodging a detain-er with state prison authorities so that the defendant charged with federal crimes would not be released without notice; and the prosecutor then summoned the defendant from state prison by habeas writ, first for arraignment and (after many postponements) then for trial. The defendant objected that he was being denied the speedy process required by Article IV(c) of the IAD. 436 U.S. at 345-48, 98 S.Ct. 1834.
After the defendant’s federal conviction, the circuit court held that the deadlines prescribed by the IAD had been breached, requiring (under explicit provisions of the IAD) dismissal of the federal indictment with prejudice. The Supreme Court agreed, saying that the detainer had triggered the IAD and that the habeas writ comprised a “written request” for initiating a transfer contemplated by Article IV of the IAD. Mauro, 436 U.S. at 361-64, 98 S.Ct. 1834. That the writ had been used as part of the IAD process did not negate the IAD’s express time limitations and sanction for ignoring them. Id.
However, Mauro went on to reject the suggestion that, if the Court upheld the time limit on the IAD proceeding, a state governor could in some other case frustrate a writ of habeas corpus by refusing to surrender a prisoner to federal court. Instead, the Court distinguished between the time limits of Article IV(c) triggered by the detainer and Article IV(a)’s reservation of the governor’s power to withhold consent. Mauro, 436 U.S. at 363-64, 98 S.Ct. 1834. The time limits, it said, had been accepted by the federal government when it invoked the IAD procedures. Id. at 364, 98 S.Ct. 1834.
By contrast, the Court held, the consent reservation merely preserved for holding states any pre-existing authority they had to refuse requests, Mauro, 436 U.S. at 363 & n. 28, 98 S.Ct. 1834; it did not curtail whatever authority the habeas writ traditionally gave the federal court to insist on the production of a defendant contrary to the wishes of the state. The Court responded to the federal government’s concern that a decision in favor of Mauro would allow a governor to refuse a habeas writ:
We are unimpressed. The proviso of Art. IV(a) does not purport to augment the State’s authority to dishonor such a writ. As the history of the provision makes clear, it was meant to do no more than preserve previously existing rights of the sending States, not to expand them. If a State has never had authority to dishonor an ad prosequendum writ issued by a federal court, then this provision could not be read as providing such authority.
Id. at 363, 98 S.Ct. 1834 (internal footnote omitted and emphasis added).
This limiting passage was part of the Court’s balanced reading of the IAD and, in answering a substantive objection to the Court’s treatment of the IAD’s time limits as binding on the federal government, was not dicta but part of the Court’s rationale for its holding. And in saying that state *6 authority to withhold the prisoner was not augmented beyond whatever had existed before the IAD, Mauro was saying that a habeas writ — even though it followed a detainer — retained its pre-IAD authority to compel a state to surrender a prisoner.
That Article IV(a)’s proviso was not intended to give governors a veto power operative against the federal government is borne out by a telling piece of background indicating that it was concerned with the pre-IAD rules of extradition as between individual states;[2] the federal government, by contrast, proceeded prior to the IAD not by extradition but by use of habeas. But the proper construction of Article IV(a) is not open to debate here: under Mauro, its proviso cannot be read as “providing ... authority” that the states had previously lacked. 436 U.S. at 363, 98 S.Ct. 1834.
That “a state has never had authority to dishonor an ad prosequendum writ issued by a federal court” is patent. Under the Supremacy Clause, U.S. Const, art. VI, cl. 2, the habeas statute — like any other valid federal measure — overrides any contrary position or preference of the state, a principle regularly and famously reaffirmed in civil rights cases, e.g., Cooper v. Aaron, 358 U.S. 1, 18-19, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958); United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964), as in many other contexts, e.g., Washington v. Wash. State Commercial Passenger Fishing Vessel Ass’n, 443 U.S. 658, 695-96, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979). State interposition to defeat federal authority vanished with the Civil War.
Pleau and Governor Chafee cite a miscellany of old circuit-court statements that a demand by a federal court for a state prisoner depends upon comity,[3] but these cases misread a 1922 Supreme Court case, Ponzi v. Fessenden, 258 U.S. 254, 260-62, 42 S.Ct. 309, 66 L.Ed. 607 (1922); Ponzi, referring generally to principles of comity, held that the federal government through the Attorney General could choose, as a matter of comity on its side, to deliver a federal prisoner for trial on state charges. Id. at 262, 42 S.Ct. 309. Ponzi neither held nor said that a state governor may invoke comity principles to disobey a federal court habeas writ.
None of these circuit cases cited by Pleau and the governor presented a litigated controversy between the United States and a state over the enforcement of a federal writ. To the extent not dicta or brief asides, such cases involved odd situations such as attempts by federal criminal defendants to obtain the presence of co-defendants held in state prisons. In all events, these cases cite Ponzi (or other circuit cases relying on Ponzi), which simply had nothing to do with a federal court’s order to a state.
The Supremacy Clause operates in only one direction and has nothing to do with comity: it provides that Congress’ enactments are “the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstand *7 ing.” U.S. Const, art. VI, cl. 2. That there is an overriding federal interest in prosecuting defendants indicted on federal crimes needs no citation, and the habeas statute is an unqualified authorization for a federal court to insist that a defendant held elsewhere be produced for proceedings in a federal court.
This court earlier said that we were “confident that the writ would be held enforcible” over a state’s contrary preference. United States v. Kenaan, 557 F.2d 912, 916 n. 8 (1st Cir.1977); accord United States v. Graham, 622 F.2d 57, 59 (3d Cir.), cert. denied, 449 U.S. 904, 101 S.Ct. 278, 66 L.Ed.2d 135 (1980); United States v. Bryant, 612 F.2d 799, 802 (4th Cir.1979), cert. denied, 446 U.S. 919, 100 S.Ct. 1855, 64 L.Ed.2d 274 (1980); Trafny v. United States, 311 Fed.Appx. 92, 95-96 (10th Cir.2009) (unpublished).[4] A contrary Second Circuit dictum, United States v. Scheer, 729 F.2d 164, 170 (2d Cir.1984), was properly described as a misreading of Mauro. See id. at 172 (Kearse, J., concurring).
As a fallback, Pleau and Governor Chafee say that even if today courts would all agree that the Supremacy Clause trumps a state’s refusal to honor the writ, Congress — to borrow a phrase — “captured in amber” the misguided notion from old (but erroneous) circuit precedent that honoring the federal writ is a matter of state comity. There is, of course, nothing to suggest that Congress was remotely aware of these decisions; and, as already noted (see note 2, above), what legislative history exists shows that the consent provision was concerned with one state’s effort to extradite a prisoner held by another and the possible need for consent.
Even without such history, the construction offered fails the test of common sense. One can hardly imagine Congress, whether in approving the IAD or at any other time, empowering a state governor to veto a federal court habeas writ — designed to bring a federally indicted prisoner to federal court for trial on federal charges — because the governor opposed the federal penalty that might be imposed if a conviction followed. If we were now determining Congress’ intent afresh, the improbability of such an intention would be apparent.
But, once again, this court cannot disregard Mauro and construe the consent provision as if it were an open issue; canons of construction, interpretive rules for compacts, and conjectures about whether Congress held mistaken views at the time of the IAD’s adoption are all beside the point. Mauro said that “[i]f a State has never had authority to dishonor an ad prosequendum writ issued by a federal court, then [the consent provision] could not be read as providing such authority.” 436 U.S. at 363, 98 S.Ct. 1834. Given the Supremacy Clause, the states have always lacked that authority.
Were Pleau and Governor Chafee to prevail, Pleau could be permanently immune from federal prosecution, and the use of the efficient detainer system badly compromised. He is currently serving an 18-year term in Rhode Island prison and, if the writ were denied, might agree to a state sentence of life in Rhode Island for the robbery and murder.[5] Even if Pleau *8 served only his current 18-year term, needed witnesses for federal prosecution could be unavailable two decades from now. Instead of a place of confinement, the state prison would become a refuge against federal charges. Mauro forbids such a result.
The writ of prohibition is denied and the stay of the habeas writ is vacated.

It is so ordered.

. E.g., Weekes v. Fleming, 301 F.3d 1175, 1180 n. 4 (10th Cir.2002), cert. denied, 537 U.S. 1146, 123 S.Ct. 950, 154 L.Ed.2d 848 (2003); Weathers v. Henderson, 480 F.2d 559, 559-60 (5th Cir.1973) (per curiam); Derengowski v. U.S. Marshal, Minneapolis Office, Minn. Div., 377 F.2d 223, 223-24 (8th Cir.), cert. denied, 389 U.S. 884, 88 S.Ct. 144, 19 L.Ed.2d 180 (1967); United States v. Horton, No. 95-5880, 1997 WL 76063, at *3 (4th Cir. Feb. 24, 1997) (per curiam) (unpublished).

. The report of the Council of State Governments, which drafted the IAD and urged its adoption on the states and federal government, Mauro, 436 U.S. at 350-51, 98 S.Ct. 1834, explained: "The possibility [of the Governor withholding consent] is left open merely to accommodate situations involving public policy which occasionally have been found in the history of ex tradition.” Council of State Gov’ts, Suggested State Legislation Program for 1957, at 79 (1956) (emphasis added).

. See, e.g., McDonald v. Ciccone, 409 F.2d 28, 30 (8th Cir.1969); Stamphill v. Johnston, 136 F.2d 291, 292 (9th Cir.), cert. denied, 320 U.S. 766, 64 S.Ct. 70, 88 L.Ed. 457 (1943); Lunsford v. Hudspeth, 126 F.2d 653, 655 (10th Cir.1942).

. Yet another circuit, while noting that Mauro ’s conditional language left the ultimate issue open, observed: "We would have thought that, under the Supremacy Clause, a state was not free to delay or disapprove compliance with the writ executed under federal statutory authority----” United States v. Hill, 622 F.2d 900, 907 & n. 18 (5th Cir.1980).

. See Brief for Amicus Curiae Governor Lincoln D. Chafee in Support of Pet'r Ex. A (letter from Pleau to Rhode Island Assistant *8 Attorney General offering to plead to sentence of life without parole on state charges).