# United States Court of Appeals

## For the First Circuit

———————————

No. 18-1464

IN RE: GRAND JURY SUBPOENA

———————————

PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, <u>Chief U.S. District Judge</u>]

———————————

Before
Howard, <u>Chief Judge</u>,
Kayatta and Barron, <u>Circuit Judges</u>.

———————————

<u>Neil F.X. Kelly</u>, Assistant Attorney General for the State of
Rhode Island, with whom <u>Peter F. Kilmartin</u>, Attorney General of
the State of Rhode Island, and <u>Sean Lyness</u>, Special Assistant
Attorney General for the State of Rhode Island, were on brief, for
petitioner.
<u>Donald C. Lockhart</u>, with whom <u>Stephen G. Dambruch</u>, United
States Attorney, was on brief, for respondent.

———————————

November 21, 2018

———————————

**KAYATTA**, **Circuit Judge**.  The Rhode Island Department of Education and Training ("Department") petitions us for a writ of advisory mandamus to answer the following question:  May a state government successfully invoke the attorney-client privilege in response to a federal grand jury subpoena?  The petition comes in response to a holding by a federal district court in the District of Rhode Island that the privilege is categorically unavailable to a state government in receipt of a federal grand jury subpoena.  For the reasons discussed below, we grant the writ and explain why such a categorical rule is not appropriate.

## I.

Given that portions of the record are sealed, we discuss the factual background of this matter only briefly.  A federal grand jury sitting in the District of Rhode Island subpoenaed certain records from the Department.  The Department moved to quash the subpoena to the extent it sought to compel the production of documents containing confidential communications between Department staff and Department legal counsel.  The district court denied the motion and ordered the Department to turn over the requested communications, holding that, as a categorical matter, "the attorney-client privilege does not shield communications between government lawyers and their clients from a federal grand jury."  Order at 2, In re Grand Jury Subpoena (R.I. Dep't of Labor and Training), No. 18-4 WES (D.R.I. Apr. 25, 2018).  The district

court declined to certify the issue for appeal under 28 U.S.C. § 1292(b), Order at 5, In re Grand Jury Subpoena (R.I. Dep't of Labor and Training), No. 18-4 WES (D.R.I. May 16, 2018), leaving the Department with only one traditional option for gaining appellate review: refusing to comply with the subpoena, incurring a contempt order, and appealing from that order. Reluctant to violate a court order, the Department instead petitioned this court for a writ of advisory mandamus under 28 U.S.C. § 1651 directing the district court to quash the subpoena.

## II.

We consider first whether advisory mandamus is available. The All Writs Act, 28 U.S.C. § 1651, empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." One of these writs is the writ of mandamus, which comes in two varieties. The more commonly sought writ is that of supervisory mandamus, which is available when "the issuance (or nonissuance) of [a district court] order presents a question anent the limits of judicial power, poses some special risk of irreparable harm to the [party seeking mandamus], and is palpably erroneous." United States v. Horn, 29 F.3d 754, 769 (1st Cir. 1994). The Department does not contend that this more common form of mandamus is available here. Rather, it seeks a writ of advisory mandamus, which we have described as being available only in "rare

cases; the usual requisites are that the issue be an unsettled one of substantial public importance, that it be likely to recur, and that deferral of review would potentially impair the opportunity for effective review or relief later on." United States v. Pleau, 680 F.3d 1, 4 (1st Cir. 2012) (en banc).

We have little trouble concluding that the first two requisites for invoking advisory mandamus are satisfied here. The parties agree that the issue on which our opinion is sought is unsettled in this circuit, while (as we will discuss) other circuits are split. And the degree to which communications between government counsel and public employees may be shielded from a grand jury subpoena is of substantial public importance. Significantly, too, the petition seeks our opinion on a rule of law and not on the manner in which the trial court exercised its discretion. See In re Insurers Syndicate, 864 F.2d 208, 211 (1st Cir. 1988) ("[M]andamus, as a general rule, will not issue to control exercises of judicial discretion."). We also see the issue as likely to recur; the fact that multiple circuits have already weighed in on the subject suggests as much, and the United States offers little to persuade us otherwise. Indeed, the ruling below in this very case makes it more likely that grand juries will seek such information. And if the district court ruling remains extant, it may dissuade public officials in other cases from challenging subpoenas or perfecting appeals from subsequent district court

opinions that track the holding below in this case. Finally, prolonged doubt about the sustainability of the privilege in the face of grand jury subpoenas could leave many public officials uncertain about how to conduct themselves in seeking -- or not seeking -- legal advice.

The more challenging question is whether refusing to exercise our mandamus jurisdiction "would potentially impair the opportunity for effective review." Pleau, 680 F.3d at 4. The United States argues that the Department can secure effective review by defying the subpoena, incurring a contempt order, and appealing that order. The Department concedes that a private party may follow such a path without too much difficulty in order to obtain interlocutory review of a discovery ruling. See Alexander v. United States, 201 U.S. 117, 121 (1906). Nevertheless, the Department contends that it has a heightened duty to follow (and to be perceived to follow) the law. For that reason, it argues that its ability to seek appellate review in ordinary course is impaired as compared to the ability of private parties to seek such review.

We agree with the Department that the option of perfecting an appeal in ordinary course by triggering a finding of contempt may be materially less attractive -- and thus less readily available -- to a government agency than it might be to a private party. In so concluding, we recognize that we have nevertheless

twice found a witness's status as a government employee insufficient to justify foregoing the need to trigger a contempt finding as a predicate to appeal. See Bennett v. City of Bos., 54 F.3d 18, 21 (1st Cir. 1995); Corporacion Insular de Seguros v. Garcia, 876 F.2d 254, 260 (1st Cir. 1989). In neither case, however, were we asked to consider a grant of advisory mandamus. Rather, Bennett clearly concerned a request for traditional, supervisory mandamus. See Bennett, 54 F.3d at 21 (analyzing the traditional mandamus factors). And while Garcia did not expressly identify the form of mandamus relief to which it referred, it relied on a Supreme Court opinion that plainly concerned the subject of traditional, supervisory mandamus relief. See Garcia, 876 F.2d at 260 (citing Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 290 (1988)). One of the factors required for this court to grant traditional, supervisory mandamus is that the district court order be "palpably erroneous." Bennett, 54 F.3d at 21; see also Gulfstream Aerospace Corp., 485 U.S. at 290 (finding traditional, supervisory mandamus available only when the district court "clearly overstepped its authority"). In such a case, a party held in contempt can be relatively confident that a successful appeal in ordinary course will deliver vindication. To obtain advisory mandamus, however, the issue must be "unsettled." Pleau, 680 F.3d at 4. Hence the risk of being found in contempt with no eventual vindication is greater in this case than it was

in Bennett or Garcia. For this reason the Department has shown, albeit barely, that the enhanced impediment it faces as a governmental entity to securing appellate review in ordinary course supports a discretionary grant of advisory mandamus relief assuming that all other requisites are well satisfied. See In re The Justices of the Supreme Court of P.R., 695 F.2d 17, 25 (1st Cir. 1982) (granting advisory mandamus relief even though traditional appellate review was available because "[t]o require the Justices unnecessarily to assume the role of advocates or partisans on these issues would tend to undermine their role as judges").

We are also confident that the other requisites are well satisfied. The novelty of the question, its substantial public importance, and its likeliness to recur -- coupled with the strong solicitude the common law has afforded the attorney-client privilege, see Upjohn Co. v. United States, 449 U.S. 383, 389 (1981), and the heightened federalism concerns implicated in this case, see In re Justices of Superior Court Dep't of Mass. Trial Court, 218 F.3d 11, 16 (1st Cir. 2000) -- weigh in favor of our accepting jurisdiction. This question need only be decided once, and once it has been decided, the answer can govern future privilege disputes. We therefore proceed to the merits.

- 7 -

## III.

### A.

While the federal rules of evidence generally do not apply to grand jury proceedings, an exception exists for privilege rules. Fed. R. Evid. 1101(d)(2). And, pursuant to Fed. R. Evid. 501, "[t]he common law -- as interpreted by the United States courts in the light of reason and experience -- governs a claim of privilege." The rationale for the attorney-client privilege "has long been recognized." Upjohn, 449 U.S. at 389. The Supreme Court has explained:

> Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. As we stated . . . in Trammel v. United States, "The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." And in Fisher v. United States, we recognized the purpose of the privilege to be "to encourage clients to make full disclosure to their attorneys."

Id. (citations omitted). In a display of understatement, we have described the privilege as "well-established." In re Keeper of the Records (XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003). At the same time, "the privilege is not limitless, and courts must take

- 8 -

care to apply it only to the extent necessary to achieve its underlying goals.  . . .  [It] must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth."  Id. (citation omitted).

The application of the attorney-client privilege to communications between government officials implicates competing public interests.  Confidentiality furthers the public interest by making it more likely that public employees will seek to know the law when contemplating certain actions.  On the other hand, in the case of public employees, one might say that the ultimate client is the public and that the public interest in transparent government processes cuts against the robust maintenance of any privilege.

Four circuits have weighed in on the subject of grand jury subpoenas seeking confidential communications between government attorneys and government officials.  Of those, three have found that the privilege does not apply to such communications, see In re A Witness Before the Special Grand Jury 2000-2, 288 F.3d 289 (7th Cir. 2002); In re Bruce R. Lindsey (Grand Jury Testimony), 158 F.3d 1263 (D.C. Cir. 1998); In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910 (8th Cir. 1997), and one has found the opposite, see In re Grand Jury Investigation, 399 F.3d 527 (2d Cir. 2005).  The split is more even, however, when considering only the cases in which a federal grand jury sought

potentially privileged materials from state officials. Within this subsection of cases, one circuit has found that the privilege does not apply, see In re A Witness Before the Special Grand Jury 2000-2, 288 F.3d at 293-94, and one has found the opposite, see In re Grand Jury Investigation, 399 F.3d at 532–35.

**B.**

Turning to our own analysis, we consider first the related arguments that a government lawyer should not be able to assert the privilege because the lawyer's ultimate duty is to the public, that the governmental entity need not fear prosecution, and that the privilege need be overborne by the public interest in transparent government. See In re A Witness Before the Special Grand Jury 2000-2, 288 F.3d at 293–94 (noting that "government lawyers have a higher, competing duty to act in the public interest" and citing In re Bruce R. Lindsey (Grand Jury Testimony), 158 F.3d at 1273, for the proposition that there exists a public interest in "transparent and accountable government"); id. at 294 ("A state agency, however, cannot be held criminally liable by either the state itself or the federal government."). Were these arguments dispositive, it should follow that a government could not assert the attorney-client privilege in response to a civil subpoena or a discovery request on a matter of public importance. Yet federal common law is directly to the contrary. As the Supreme Court explained in United States v. Jicarilla Apache Nation:

- 10 -

> The objectives of the attorney-client privilege apply to governmental clients. "The privilege aids government entities and employees in obtaining legal advice founded on a complete and accurate factual picture." Unless applicable law provides otherwise, the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys.

564 U.S. 162, 169-70 (2011) (citation omitted) (quoting 1 Restatement (Third) of the Law Governing Lawyers § 74 cmt. b (Am. Law Inst. 1998)).

We take from this precedent the conclusion that the public nature of the Department cannot itself deem the privilege inapplicable. Something more is needed. That something more, according to the United States, is the fact that the subpoena here comes from a criminal grand jury seeking evidence of a crime. But neither can that justification by itself be enough to sustain the United States' position. After all, subpoenas in criminal investigations are routinely served on private entities, yet those entities can successfully assert the attorney-client privilege. See, e.g., In re Grand Jury Subpoena, 273 F. Supp. 3d 296, 300-04 (D. Mass. 2017).

## c.

So none of the United States' principal arguments for sustaining the broad "no privilege" rule that the district court

- 11 -

adopted can carry the day on their own.  The United States is therefore left to argue that its arguments can do the trick when combined; i.e., if the proceeding is criminal and the witness is a government employee or entity, then the privilege does not apply. As for why the United States' arguments might accomplish together what none can do on its own, the United States does not say. Rather, it points to cases applying federal law to federal actors. See In re Bruce R. Lindsey (Grand Jury Testimony), 158 F.3d at 1266; In re Grand Jury Subpoena Duces Tecum, 112 F.3d at 915.  But those decisions turn on the application of 28 U.S.C. § 535(b), which mandates that federal employees report any wrongdoing they may witness to the Attorney General but does not purport to require any such disclosure by state employees.

Moreover, the federal-state conflict that the availability of the attorney-client privilege implicates may cut in favor of respecting the state's view of the best balance between the public's interest in government transparency and the beneficial aspects of the privilege.  See In re Grand Jury Investigation, 399 F.3d at 534 (discussing the federalism concerns the question implicates and noting that Connecticut chose to adopt strong privilege rules against its own investigators).  In brief, why should the federal grand jury -- without direction from Congress -- get to overrule a state's decision on how best to

operate its own government when there is no claim of wrongdoing by state officials?

On the other hand, the United States' argument gathers much more force when the federal grand jury is investigating potential crimes that state officials or employees may have committed themselves. The public interest in uncovering and stopping crime grows substantially when crime invades the very institutions that establish and preserve our balance of order and freedom. In the face of such an invasion, the government and its powers and fisc may become instruments for facilitating rather than deterring crime. And, in such circumstances, the benefit of federalism may well rest more in its checking function than in its deference to the state. For these reasons, it is perhaps not surprising that in all of the cases in which any of our fellow circuits have rejected otherwise valid assertions of the attorney-client privilege by government entities or persons, the search for information was aimed at suspected wrongdoing within the government. See In re A Witness Before the Special Grand Jury 2000-2, 288 F.3d at 290 (investigating potential wrongdoing by the Governor of Illinois); In re Bruce R. Lindsey (Grand Jury Testimony), 158 F.3d at 1266 (investigating potential wrongdoing by the President of the United States); In re Grand Jury Subpoena Duces Tecum, 112 F.3d at 913-14 (same). So in this context -- i.e., a grand jury investigating potential crime within the

government -- the United States' principal arguments are both joined in reinforcement and heightened in their importance, enough so, perhaps, to tip the balance.

Here, though, the United States made no attempt to persuade the district court that the grand jury's subpoena is targeted at wrongdoing by government officials themselves. And, at oral argument, Rhode Island's Attorney General stated that as a matter of practice, the state would not assert the privilege if the investigation were targeted at state misconduct. So we have no reason to decide whether and on what type of showing a subpoena targeted at wrongdoing by state officials might overbear any privilege that might otherwise be asserted. Instead, on the record as it now stands, we need simply reject the categorical rule that a state government has no attorney-client privilege that can be invoked in response to a grand jury subpoena.

## IV.

We cannot fault the district court for adopting what it viewed to be the majority position on a difficult issue of first impression in this circuit. Nonetheless, the petition for a writ of mandamus is granted. The writ shall issue in accordance with this opinion directing the district court to vacate its denial of the motion to quash.