**In the Interest of T.P. and A.T., Minor Children,**

**S.P., Mother, Appellant,**

**T.P., Minor Child, Appellant.**

No. 08–0908.

Court of Appeals of Iowa.

Aug. 27, 2008.

Thomas Graves, Des Moines, for appellant mother.

Nichole Mordini of Mordini Law Office, Des Moines, for appellant minor child.

Andrea Flanagan of Sporer & Ilic, P.C., for appellee father of T.P.

Thomas J. Miller, Attorney General, Kathrine Miller–Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Chris Gonzales, Assistant County Attorney, for appellee State.

Michael Bandstra, Des Moines, guardian ad litem for minor children.

Considered by HUITINK, P.J., and VOGEL and EISENHAUER, JJ.

VOGEL, J.

Sherri, the mother of Angelina (born in 2003) and Taylar (born in 1994), appeals from the district court order terminating her parental rights to the two girls. Taylar separately appeals. We affirm.

## I. Background Facts and Proceedings

In January 2005, Angelina and Taylar were removed from Sherri's custody due to Sherri's methamphetamine use, which resulted in a founded child abuse assessment of denial of critical care. Subsequently, Angelina and Taylar were adjudicated to be children in need of assistance pursuant to Iowa Code sections 232.2(6)(b), (c)(2), & (n) (2005). The children were returned to Sherri's care in May 2005, but were once again removed in September 2005 and have remained out of Sherri's care since that time.

Although Sherri was offered numerous services, her participation was sporadic and she did not follow through with substance abuse treatment. In June 2006, the State filed a petition seeking to terminate Sherri's parental rights. In August 2006, following the close of evidence in the termination hearing, the district court declined to terminate Sherri's parental rights. It granted Sherri an additional six months to work toward reunification, partly to give her time to address her recent diagnosis of bipolar disorder, stating:

> At this time, I conclude it is in the best interests of the children to allow [Sherri] a final chance to demonstrate that treatment of her mental illness will allow her to overcome the deficiencies in her parenting that have been demonstrated in this case.

Unfortunately, Sherri soon stopped participating in mental health counseling and did not comply with the recommended substance abuse treatment.

In May 2007, following the second termination hearing, the district court terminated Sherri's parental rights to Angelina and Taylar. Sherri appealed asserting the district court erred in allowing the same attorney, Mike Bandstra, to serve both as Taylar's attorney and guardian ad litem. She argued Bandstra could not serve in that dual capacity as Taylar's preference to be returned to Sherri's custody conflicted with Bandstra's recommendation that Sherri's parental rights be terminated. This court examined Bandstra's dual role as attorney and guardian ad litem for Taylar. We found that although an attorney may act in both capacities, in this case, Taylar's age and maturity necessitated separate counsel be appointed to give voice to her wishes apart from the position advocated by her guardian ad litem. *See* Iowa Code § 232.116(3)(b) (2007) (stating that a court need not terminate the parent-child relationship if the child is over ten years of age and objects to the termination). We remanded for the district court "to appoint a separate attorney for Taylar" and to hold a new hearing on the petition to terminate Sherri's parental rights. *In re A.T.*, 744 N.W.2d 657, 665–66 (Iowa Ct.App.2007).

Following remand, Nicole Mordini was appointed as Taylar's attorney. Bandstra continued as guardian ad litem for Taylar and as attorney and guardian ad litem for Angelina. Upon Sherri's application, a

hearing was then held to determine whether visitation should resume. In March 2008, the district court ordered that semi-supervised visitation resume between Sherri and Taylar. However, in light of the case workers' and Taylar's therapist's concerns regarding Sherri's inappropriate behavior and statements during visits, only supervised visitation resumed between Sherri and Taylar. In April 2008, a third termination of parental rights hearing was held, and in May 2008, the district court terminated Sherri's parental rights to Angelina and Taylar pursuant to Iowa Code sections 232.116(1)(d), (f), and (*l*) (2007).[1] Sherri and Taylar separately appeal from the district court's order.

## II. Standard of Review

We review termination of parental rights cases de novo. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them.[2] *Id.*; Iowa R.App. P. 6.14(6)(*g*). The grounds for termination must be proved by clear and convincing evidence. *J.E.*, 723 N.W.2d at 798. Our primary concern is always the best interests of the children. *Id.*; Iowa R.App. P. 6.14(6)(*o*).

In seeking out those best interests, we look to the child's long-range as well as immediate interests. This requires considering what the future holds for the child if returned to the parents. When making this decision, we look to the parents' past performance because it

---

1. The juvenile court also terminated Taylar's father's and Angelina's father's parental rights. Their rights are not at issue in this appeal.

2. Sherri also claims the district court improperly relied on her body language during the hearing. However, we find no error as the district court makes credibility assessments

based on a variety of common sense observations. *Long v. Long*, 255 N.W.2d 140, 143 (Iowa 1977) (discussing that such things as the "demeanor of the parties, candor or lack thereof on the part of the witnesses, attitudes, real and assumed, and apparent motives of those testifying, are all entitled to much weight in making findings").

may indicate the quality of care the parent is capable of providing in the future. *J.E.*, 723 N.W.2d at 798 (quoting *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997)).

## III. Best Interests of the Children

### A. *Sherri's Appeal*

■ Sherri claims that termination of her parental rights was not in the best interests of Angelina and Taylar.[3] In January 2005, the family became involved with the Iowa Department of Human Services (DHS) due to Sherri's methamphetamine use. Sherri was offered numerous services, including in-home services, mental health counseling, substance abuse evaluation, substance abuse treatment, drug testing, and supervised visitation. However, Sherri's participation in these services was sporadic, as she has continued to struggle with her drug addiction and has not followed through with appropriate treatment. Sherri has not been able to maintain independent or stable housing arrangements for nearly two years. Additionally, Sherri has not addressed her mental health issues, nor has she been forthcoming with DHS workers as to critical information throughout the case.

Prior to the first termination hearing in August 2006, Sherri tested positive for methamphetamine, refused many required drug tests, and was discharged unsuccessfully from outpatient substance abuse treatment. After Sherri was granted an additional six months to work towards reunification, she stopped attending mental health counseling, was jailed twice,[4] and admitted to using methamphetamine with her oldest daughter, who is not a party to this case. Additionally, Sherri did not enter a residential treatment facility until just prior to the May 2007 hearing and was unsuccessfully discharged shortly thereafter.

In May 2007, the district court terminated Sherri's parental rights. Sherri appealed the district court's order, and while her appeal was pending, she entered into and was unsuccessfully discharged from two additional residential programs.[5] She was also offered visitation with Angelina and Taylar as long as she sought treatment in a residential facility, but as she did not comply, visitation was denied. Subsequently, the case was remanded to the district court and Sherri resumed supervised visitation with Taylar. Finally, in April 2008, five days before the third termination hearing, Sherri entered into a residential treatment program for the fourth time in approximately one year.

Angelina and Taylar have been out of Sherri's custody for nearly three years. Sherri claims she has been clean from drugs since February 2007, but that is not bore out by the record as she stopped using DHS services, did not submit to drug tests, and has not completed a substance abuse treatment program. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App.1998) ("[I]n considering the impact of

---

3. Sherri raises a claim asserting insufficiency of the evidence, but her argument is predominately that termination is not in the best interests of her children. She does not allege that the State failed to prove by clear and convincing evidence any of the elements under Iowa Code sections 232.116(1)(d),(f) or (*l*) (2005).

4. Throughout the pendency of this case, Sherri was involved in criminal activities, resulting convictions and probation violations.

5. In our last opinion, we acknowledged that Sherri had entered into a residential treatment program weeks before the termination hearing. We then gave Sherri the benefit of the doubt by stating "we cannot assume that her current program will fail."

a drug addiction, we must consider the treatment history of the parent to [determine] the likelihood the parent will be in a position to parent the child in the foreseeable future."). Further, because Sherri has not complied with recommended mental health services, it is clear Sherri cannot care for Angelina and Taylar either now or in the foreseeable future. The children need a safe and permanent home. *J.E.,* 723 N.W.2d at 801 (Cady, J., concurring specially) (stating children's safety and their need for a permanent home are the defining elements in determining a child's best interests). Taylar and Angelina are very fortunate to have found a safe and stable home with their foster parents, who are willing to adopt them. Both girls have thrived in this home, and Taylar's therapist reported that her foster parents provide her with "all her physical and emotional needs, which Sherri has not been able to provide for Taylar." We have stated many times that "[a]t some point, the rights and needs of the [children] rise above the rights and needs of the parents." *In re J.L.W.,* 570 N.W.2d 778, 781 (Iowa Ct.App.1997). Therefore we agree with the district court that it is in Angelina and Taylar's best interests that Sherri's parental rights be terminated.

### B.  *Taylar's Appeal*

■ Separately, Taylar asserts that termination is not in her best interests.[6] Taylar testified that she wanted to return to her mother's custody, regardless of whether that would require separation from Angelina. She acknowledged that she would be very sad if she was separated from Angelina, but could cope with that situation as long as she was able to maintain contact with Angelina. However, Taylar's therapist reported that it would be detrimental to Taylar if she was separated from Angelina. All of the case workers recognized not only the bond between Taylar and Sherri, but also the bond Taylar has with her foster parents and Angelina. Taylar also admitted that her foster parents were supportive and that she would "end up in a good place" if Sherri's parental rights were terminated. Furthermore, the case workers were all in agreement that Taylar needs permanency and recommended termination of Sherri's parental rights. Even if Sherri began to seriously address her mental health and substance abuse issues, there would be a significant time period before she would be able to adequately care for Taylar. We agree with the district court that Sherri cannot provide a healthy and safe environment now, and considering her many years of substance abuse and mental health problems, it is not a situation that could be quickly resolved. Thus, from Taylar's appeal we additionally conclude that termination of Sherri's parental rights is in Taylar's best interests.

### IV.  Visitation

Next we turn to Sherri's contention that the State failed to provide reasonable efforts because DHS provided only supervised as opposed to the court-ordered semi-supervised visitation with Taylar from February 2008 to May 2008. The record indicates that supervised visitation was necessary. In a February 2008 report, a DHS worker stated: "Sherri continues to struggle with what is appropriate to discuss with Taylar and Angelina specifically during visitation and in the letters she has written." Taylar's therapist also advised that "it is very important for all

---

6.  Taylar concedes that the State has met its burden of proof for termination of Sherri's parental rights.

visits to be supervised." In its termination ruling, the district court acknowledged this retroactively by stating: "I will not second guess the professionals who determined that, in spite of my [March 2008] order otherwise, the time Taylar had with her mother should be supervised." We agree with the district court's conclusion that supervised visitation was appropriate and did not deprive Sherri of a reasonable service which prevented her reunification with her daughters.

## V. Conflict of Interest

### A. *Standing*

■ We first note that Sherri also raises a claim, identical to Taylar's as discussed below, that Bandstra should not have continued as Taylar's guardian ad litem because it conflicted with his previous role as Taylar's attorney. We recognize that in our prior decision in this case, we considered Sherri's argument that Taylar should be appointed a separate attorney. *A.T.*, 744 N.W.2d at 660. However, at that point, Taylar did not have an attorney to raise the claim for her and we did not reach the issue of whether Sherri had standing. In the present case, we conclude that Sherri does not have standing to assert the conflict of interest argument on appeal, as Taylar was equipped with her own attorney to represent and protect her separate interests. *See In re D.G.*, 704 N.W.2d 454, 459 (Iowa Ct.App.2005) (noting one parent does not have standing to join in on another parent's best interests claim); *see also In re J.V.*, 464 N.W.2d 887, 891–92 (Iowa Ct.App.1990) (raising but not deciding whether the parents had standing to assert the guardian ad litem provided ineffective assistance to the children in a parental termination case).

### B. *Error Preservation*

Following remand, Mordini was appointed as Taylar's attorney and Bandstra continued as Taylar's guardian ad litem. *A.T.*, 744 N.W.2d at 665–66 (remanding for the appointment of a separate attorney but not a new guardian ad litem); *but see* Iowa Code § 232.89(4) (stating that the same person may serve as both the child's attorney and guardian ad litem, but the district court may appoint a separate *guardian ad litem* when a conflict arises between these two roles). Taylar contends that Bandstra should not have continued to serve as her guardian ad litem because he previously served in the dual role of her guardian ad litem and attorney and was therefore representing interests adverse to those of a former client. *See* Iowa R. of Prof'l Conduct 32:1.9 (stating an attorney shall not represent another person whose interests are adverse to those of a former client). All parties were aware of Bandstra's previous role as Taylar's attorney, yet none of the parties raised this alleged conflict of interest prior to or during the subsequent hearing.

"The right of a former client to object to his or her attorney's subsequent representation of an adverse interest may be expressly or tacitly waived." 7 Am. Jur. 2d. *Attorneys at Law* § 193, at 245 (2007). "[I]t has been widely held that in attorney disqualification matters the failure to raise a timely objection may result in waiver." *In re Marriage of Batchelor*, 213 Wis.2d 251, 570 N.W.2d 568, 570 (Ct.App.1997); *see Hall v. Hall*, 421 So.2d 1270, 1271 (Ala.Civ.App.1982) (finding that an ex-wife waived any objection to her former attorney representing her ex-husband in a modification of a dissolution); *see also In re V.M.K.*, 460 N.W.2d 191, 193 (Iowa Ct. App.1990) (discussing that issues not presented to the district court, even constitutional issues, are waived on appeal). In our previous opinion, we determined that Taylar, as a minor, was incapable of waiv-

ing any conflict of interest issue. However, on remand and with an attorney appointed to represent Taylar's interests, no objection was made to allowing Bandstra to continue serving as Taylar's guardian ad litem.[7] Bandstra appeared at the February 2008 visitation hearing and the March 2008 termination hearing serving in that capacity without objection. At the opening of the termination hearing, the district court made the following statement:

> This matter comes before the court on remand from the Iowa Court of Appeals, which found that I had erred when I allowed Mr. Mike Bandstra to proceed as both attorney and guardian ad litem for Taylar.... I've appointed a new attorney for Taylar, Nicole Mordini.

Bandstra's prior role was well known to Taylar's newly appointed attorney, which was made clear during the proceedings, as is evidenced in the record. With no objection lodged, the alleged conflict was waived. Additionally, Taylar concedes that she did not preserve error on this issue.

### C. Conflict of Interest as Ineffective–Assistance–of–Counsel Claim

▋ In spite of the waiver, Taylar argues that on appeal we may address the alleged conflict and cites to *In re J.P.B.*, 419 N.W.2d 387 (Iowa 1988). In that case, a mother and daughter appealed a district court order terminating the parent-child relationship between the mother and her daughter and son. The district court had appointed an attorney for the mother, an attorney for the children, and a separate guardian ad litem for the children. *Id.* at 389. The daughter argued she was denied effective assistance of counsel because the attorney appointed to represent both her and her brother could not effectively serve both clients when she opposed termination while her brother favored termination. *Id.* at 388. The mother argued she was also denied effective assistance of counsel because her attorney did not object to the dual representation. *Id.* The State asserted that as neither the daughter nor mother objected to the alleged conflict of interest during trial, the ineffective-assistance-of-counsel claim had not been preserved for appellate review. *Id.* at 389. Our supreme court observed that there is no postconviction relief equivalent for a termination of parental rights action. *Id.* at 390. Moreover, the failure to object to a conflict of interest may itself constitute ineffective assistance of counsel. *Id.* Thus, the only way to raise the issue is on direct appeal.[8] *Id.* The court found that "the lack of objection to an alleged conflict of interest did not preclude consideration of the [ineffective-assistance-of-counsel] issue on appeal." *Id.* at 389; *see also J.V.*, 464 N.W.2d at 891–92 ("[I]n the interest of justice and because the children are by definition legally unable to help themselves, it is our responsibility to evaluate the performance of the guardian ad litem, *sua sponte* if necessary."). While *J.P.B.* does not present the precise issues as are before us in this appeal, the rationale for allowing the conflict of interest issues to be considered on appeal in that case are persuasive, and we proceed on the merits of the conflict of interest claim, under the analysis of ineffective assistance of counsel.

---

7. No objection was made to Bandstra continuing to serve as Angelina's attorney or guardian ad litem and no resulting conflict of interest is raised on appeal.

8. It would be difficult for Taylar's attorney, Mordini, to raise an ineffective-assistance-of-counsel claim on appeal as the attorney who represents a party in a termination of parental rights case has a duty to take the appeal. Iowa R.App. P. 6.6(4).

Termination of parental rights cases are civil proceedings. As no Sixth Amendment protections are implicated, there is no constitutional right to effective assistance of counsel. *In re D.W.*, 385 N.W.2d 570, 579 (Iowa 1986). Nevertheless, due process requires that counsel appointed pursuant to a statute provide effective assistance. *Id.* We generally apply the same standards for counsel appointed in a criminal proceeding to counsel appointed in a termination proceeding. *J.P.B.*, 419 N.W.2d at 392; *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). Thus, a juvenile claiming ineffective assistance of counsel must prove both a deficiency in counsel's performance and actual prejudice. *J.P.B.*, 419 N.W.2d at 392.

In the present case, two ineffective-assistance-of-counsel claims could be made: (1) that Mordini was ineffective in failing to lodge an objection to Bandstra's continuing to serve as Taylar's guardian ad litem; (2) that Bandstra provided ineffective assistance of counsel by continuing to serve as Taylar's guardian ad litem because of the alleged conflict of having previously served as Taylar's attorney. Only Bandstra's alleged conflict was raised for our consideration on appeal.[9]

■ An attorney and a guardian ad litem have differing duties. An attorney is obligated to maintain confidences, but a guardian ad litem may need to disclose confidential information. 3 Legal Malpractice § 28:10 (2008). "The existence of the attorney-client privilege can depend on the role in which the information was received." *Id.* However, "[a] client does not lose the [attorney-client] privilege merely because his attorney serves a dual role." *In re Matter of Grand Jury Proceeding,*

68 F.3d 193, 196 (7th Cir.1995). In the present case, we conclude there was a substantial likelihood of a conflict as Bandstra formerly represented Taylar as her attorney. 7A C.J.S. *Attorney and Client* § 185, at 173 (Supp. 2008) ("[An] attorney cannot use any knowledge or information acquired through his or her former representation if such information is of a confidential or secret nature or is so regarded by the former client."); *see also Townsend v. Townsend*, 323 S.C. 309, 474 S.E.2d 424, 428 (1996) (finding an attorney had a conflict of interest in representing a father in a child support action after having previously served as his daughter's guardian ad litem in a child custody case).

However, we are mindful of "the inadvisability of mechanically applying criminal law standards to a civil juvenile proceeding where the resolution turns not on guilt or innocence, but on the best interest of the child." *J.P.B.*, 419 N.W.2d at 390. In a juvenile proceeding, an ineffective-assistance-of-counsel claim based upon an alleged conflict of interest differs from that in a criminal proceeding. "Because of the unique nature of juvenile proceedings, we are unwilling to presume prejudice even if under ordinary criminal standards a substantial possibility of conflict would be shown." *Id.* at 392; *see Nichol v. State*, 309 N.W.2d 468, 470 (Iowa 1981) (stating that where an ineffective-assistance-of-counsel claim stems from an alleged conflict of interest, "[w]e must decide if . . . there was a conflict of interest and, if so, whether it raised a substantial possibility of prejudice to petitioner."). Thus, in a juvenile proceeding, it must be proved that an actual conflict existed and actual prejudice resulted. *J.P.B.*, 419 N.W.2d at 392.

---

9. Even if raised, the failure of Mordini to object to Bandstra continuing in his position as guardian ad litem for Taylar would not be grounds for reversal as we conclude no prejudice resulted.

Even with a finding of a conflict, rooted in Bandstra's continuing to serve as Taylar's guardian ad litem and advocating a position contrary to her wishes as a former client, we are not convinced this resulted in actual prejudice. A guardian ad litem is appointed to represent the interests of a minor child. Iowa Code § 232.2(22)(a). As Taylar's guardian ad litem, Bandstra's duties included:

(1) Conducting in-person interviews with the child, if the child's age is appropriate for the interview, and interviewing each parent, guardian, or other person having custody of the child, if authorized by counsel.

(2) Conducting interviews with the child, if the child's age is appropriate for the interview, prior to any court-ordered hearing.

(3) Visiting the home, residence, or both home and residence of the child and any prospective home or residence of the child, including each time placement is changed.

(4) Interviewing any person providing medical, mental health, social, educational, or other services to the child, before any hearing referred to in subparagraph (2).

(5) Obtaining firsthand knowledge, if possible, of the facts, circumstances, and parties involved in the matter in which the person is appointed guardian ad litem.

(6) Attending any hearings in the matter in which the person is appointed as the guardian ad litem.

. . .

Iowa Code § 232.2(22)(b). All parties agree that Bandstra was an exceptional *guardian ad litem* and pursuant to his duties, among other things, he visited Taylar in her foster homes, conducted interviews with Taylar, and maintained contact with the in-home workers. At the termi-

nation hearing, Bandstra's questioning did not reveal any information that was known to him as her former attorney, but not known to him as her guardian ad litem and then used adverse to her position opposing termination. In fact, he even elicited Taylar's preference that Sherri's parental rights not be terminated. As Bandstra points out, "[n]o example is given of how this purported conflict issue may have played out in this case." Following our review of the record, and unwillingness to apply a per se rule, we agree. *See J.P.B.,* 419 N.W.2d at 392 (stating that in juvenile proceedings, we will not presume prejudice results from a conflict of interest).

Moreover, for Taylar to demonstrate prejudice she would need to show that but for the alleged conflict, the result of the termination of parental rights proceedings would likely have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). In this case, Sherri's parental rights were terminated under Iowa Code sections 232.116(1)(d), (f), and (*l*). Facts supporting each element were established by clear and convincing evidence as discussed generally above and are not challenged by Taylar. While Taylar's desire to have her mother's parental rights remain intact was a consideration of the district court, her wishes do not take precedence over her best interests. *In re L.P.,* 370 N.W.2d 839, 843 (Iowa Ct.App.1985); *see also J.V.,* 464 N.W.2d at 890 (discussing that Iowa Code section 232.116(3) is permissive). The overarching consideration in all termination of parental rights cases is the best interests of the child, a decision the district court made after assessing all the evidence

and positions advocated by the parties. We conclude Sherri's rights would have been terminated regardless of the former role attorney Bandstra served as Taylar's attorney and guardian ad litem. Thus, because there was no prejudice from Bandstra continuing as Taylar's guardian ad litem, Taylar's claim of ineffective assistance of counsel must fail.

We have considered all of the arguments on appeal and affirm the district court's order terminating Sherri's parental rights.

**AFFIRMED.**