# IN THE COURT OF APPEALS OF IOWA

No. 17-1390
Filed December 6, 2017

**IN THE INTEREST OF D.S., K.W., and J.W.,**
**Minor Children,**

**D.S., K.W., and J.W., Minor Children,**
        Appellants,

**K.W., Father,**
        Appellant,

**K.W., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Louise M. Jacobs, District Associate Judge.


        The mother, one of the fathers, and the three children at issue appeal the juvenile court's ruling terminating the parental rights.  **AFFIRMED ON ALL APPEALS.**


        Paul L. White of Des Moines Juvenile Public Defender, Des Moines, attorney for appellants minor children.

        Erin M. Carr of Carr & Wright, P.L.C., Des Moines, for appellant father.

        Lisa A. Allison of Allison Law Firm L.L.C., Des Moines, for appellant mother.

        Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Kimberly S. Ayotte of Youth Law Center, Des Moines, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, Judge.**

Three children—D.S., born in 2002; K.W., born in 2004; and J.W., born in 200—are the subject of the juvenile court's termination of the parental rights of the mother and the two separate fathers. K.H. is the biological father of D.S.; he has not appealed. The three children, their mother, and the biological father of K.W. and J.W. (who is also the stepfather to D.S.)[1] have appealed the juvenile court's ruling.

## I. Background Facts and Proceedings.

The Iowa Department of Human Services (DHS) became involved with this family in October 2015[2] based on allegations the mother was using methamphetamine while caring for the children. The mother agreed to the application of a sweat patch, which returned a positive result for methamphetamine. The father was serving a prison sentence at the time, and the mother was the children's only caregiver. There were also concerns surrounding the family's unstable housing.

Then, in November, the mother was arrested and remained in jail for robbery in the second degree;[3] the mother agreed to the official removal of the boys from her care.

---

[1] We refer to the father of K.W. and J.W. as "the father" throughout our opinion.
[2] The mother was involved with DHS in the late 1990s and her parental rights to three children—now adults—were terminated in 2000. The reasons for the mother's previous involvement with DHS include domestic violence and her use of methamphetamine. It is unclear from the record before us whether the mother appealed the termination.
[3] The mother eventually pled guilty to the charge and received a suspended two-year sentence and probation.

It appears the appointed guardian ad litem (GAL) made an oral motion to bifurcate the roles of GAL and attorney to the children at the November 20 removal hearing.[4]  *See* Iowa Code § 232.89(4) (2015).  In the removal order, the court included a note under "OTHER" stating, "Motion to bifurcate is granted."  The children have continued to have a separate GAL and an attorney throughout the proceedings.[5]

After the mother was released from jail in late November, she had an unstable living situation.  She was employed only intermittently, and she refused to obtain a mental-health evaluation or to consider attending therapy.  The mother completed a substance-abuse evaluation, which recommended extended outpatient treatment, but the mother did not follow through.

The father was paroled from prison into a halfway house in the summer of 2016.

In October, the coordinator of the halfway house reported to DHS the father had been "violence free" while in the facility, had completed treatment for his addiction to alcohol, was attending AA meetings twice per week, and was employed.  As instructed, the father had reached out to D.S.'s and K.W.'s

---

[4] We assume the motion was made orally at the hearing as we have no record of a written, filed motion.  We are unable to verify this assumption because we have no transcript of the removal hearing.

[5] Their guardian ad litem does not participate in the appeal.  No party objects to the participation of the children in the appeal on their own behalf.  *See* Iowa R. Civ. P. 1.210; *In re H.N.B.*, 619 N.W.2d 340, 343 n.3 (noting we do not automatically apply the rules of civil procedure to juvenile proceedings).  We note that panels of our court have previously considered the appeals of children in termination actions.  *See In re G.S.*, No. 13-0884, 2013 WL 4774040, at *4 (Iowa Ct. App. Sept. 5, 2013); *In re T.P.*, 757 N.W.2d 267, 268 (Iowa Ct. App. 2008). Additionally, there is no objection to the representation of all three children by one attorney despite the diverse interests of each child.

therapists and both reported to DHS that it would not be harmful to the children if the father began supervised visits.

In November, DHS recommended giving the father a six-month extension to work toward reunification; the court adopted the recommendation at the next hearing.

The father rented an apartment in January 2017, and both he and the mother were living there by February.

According to reports from the mother's probation officer, the mother admitted using methamphetamine in both February and March. The probation officer also reported the father was present for the mother's March 2017 admission and was upset, expressing that he was going to be forced to choose between the mother and the children.

In the social worker's April 2017 report to the court, the worker noted that while the father appeared to be doing well individually:

> the concern is that [the father] continues to allow [the mother] to live with him and she continues to actively use methamphetamine. It is clear that [the father] loves his children, however this worker has had many very tough conversations with him about the fact that as long as he continues to live with and surround himself with [the mother] and her continuing active[] use, this will jeopardize his own ability to regain custody of the children. Given that less than a week ago . . . [the mother] had admitted to using methamphetamine and [the father] was unaware of this[] draw[s] concerns to the ability for the children to safely be returned to his care.

The worker then recommended changing the permanency plan to that of termination of parental rights as to both parents.

On April 28, the State filed a petition to terminate the parents' rights.

Soon thereafter, the father was drug tested as part of his parole requirements. He tested positive, and he admitted using methamphetamine intravenously.

According to the family safety, risk, and permanency (FSRP) worker, the father made some angry or threatening comments at a May visit, claiming he would "wave a gun in someone's face to get money for a lawyer" if necessary and stating the social worker had better stay away.

In the months leading up the termination hearing in July, the mother failed to show up for drug testing as ordered. The mother and father continued living together in their apartment, though neither maintained steady employment and they reported they were having trouble paying their rent. The father provided a few negative drug tests and attended some counseling sessions, but he did not write an accountability letter as DHS and the court expected him to do.

At the termination hearing, the children objected to the termination of parental rights through their attorney, who called the social worker as a witness in the children's case. During examination by the children's attorney, the social worker testified the children had been consistent in their stated desire to return to their parents' care. The children's attorney replied, "And like I said before, we agree that they're at an age where they understand that. That's why I'm an attorney and [the GAL] is the guardian ad litem because we bifurcated the roles. We did that early on in this case."

None of the children personally appeared in court; all three were older than ten at the time of the termination trial. *See* Iowa Code § 232.116(3)(b).

In an August order, the juvenile court terminated the mother's parental rights to all three children pursuant to Iowa Code section 232.116(1)(f), (g), and (*l*) (2017). The court terminated the father's rights to both K.W. and J.W. pursuant to section 232.116(1)(f).

The mother, father, and children appeal separately.

## II. Standard of Review.

We review termination proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

## III. Discussion.

### A. Mother's Appeal.

The mother appeals the termination of her parental rights. She does not challenge the statutory grounds for termination. The mother maintains the court should not have terminated her parental rights because of two of the permissive factors found in subsection 232.116(3). She argues that because all three children are over the age of ten and object to the termination, *see* Iowa Code § 232.116(3)(b), and because "there is clear and convincing evidence that termination would be detrimental to the child due to the closeness of the parent-child relationship," *see id.* § 232.116(3)(c), the court should exercise its discretion to save the parent-child relationships.

The factors weighing against termination are permissive, not mandatory. *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011). We exercise the discretion

based on the unique circumstances of each case and the best interests of the child. *A.M.*, 843 N.W.2d at 113.

Although the children have objected to the termination of the mother's parental rights, we cannot find it is in their best interests to save this parent-child relationship. *See, e.g.*, *In re K.M.*, 653 N.W.2d 602, 606 (Iowa 2002) (deciding that while the child in question "had at times expressed a desire to be reunited with her parents," "we are convinced her best interests require termination of her parents' parental rights"); *In re A.S.*, No. 16-1984, 2017 WL 710562, at *3 (Iowa Ct. App. Feb. 22, 2017) (affirming the termination of the parent's rights over the children's objection because "[o]ur overriding concern must be the long-term best interests of the children"); *In re J.S.*, No. 16-0112, 2016 WL 899857, at *3 (Iowa Ct. App. Mar. 9, 2016) (noting the consideration of the children's objection is a permissive factor and "[t]he children's yearning for reunification does not tilt the balance away from termination"). Here, the children are all living together in a pre-adoptive foster home, where each of the three boys has thrived. In contrast, the mother has been diagnosed with a severe amphetamine use disorder, and at the termination hearing in July, she admitted to using methamphetamine as recently as late May or early June. A letter written by the mother's substance-abuse counselor the day before the termination hearing stated the mother "ha[d] not been compliant with treatment guidelines and expectations" and had failed to provide any of the four required drug tests. The letter also stated the mother would be placed on a behavioral plan and be required to complete a drug test at her next appointment or she would be unsuccessfully discharged from treatment. It is

unclear if the mother maintained any period of sobriety throughout the over twenty months the children were removed from her care.

Additionally, the most recent letters from D.W.'s therapist and K.W.'s therapist each noted that the respective child had indicated his wish to return to living with his parents.  K.W.'s therapist stated K.W. had reported "he would feel devastated and lost in the event that he is unable to live with his parents again." However, the therapist also noted that "in the past reporting period [K.W.] has appeared to accept that he may not live with his parents and he has recognized his foster family as positive supports.  [K.W.] also reports being glad to still live with his brothers."  Similarly, D.S.'s therapist reported, "[D.S.] has stated if his parents' rights are terminated it will be difficult and he will be angry.  [D.S.] has also been able to talk that he will be ok[ay]."

It is understandable that the children love their mother and wish to be with her.  But the children's wishes and the strength of their bond does not sufficiently mitigate the harm the mother's substance-abuse issues would continue to cause in these young men's lives.  *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("Although it is clear that [the mother] loves her son, our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the mother's] inability to provide for [the child's] developing needs.").  The mother has not progressed in maintaining sobriety throughput the proceedings, and these children are in need of a permanent home. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency."); *see also In re J.E.*, 723 N.W.2d 795, 802 (Iowa 2006) (Cady, J., concurring specially)

(noting the "defining elements in a child's best interest" are the child's safety and the "need for a permanent home").

Termination of the mother's parental rights is in the children's best interests, and we affirm the termination of the mother's parental rights to each of the three children.

**B. Father's Appeal.**

The father of K.W. and J.W. appeals the termination of his parental rights to those two children. He contends the State has not proven by clear and convincing evidence that the children could not be returned to his care at the time of the termination hearing. *See* Iowa Code § 232.116(f)(4). He maintains the court's conclusion that the children would suffer if returned due to unresolved substance abuse and lack of stability was in error.[6] Additionally, he maintains that the safety plan he created with his therapist would enable him to keep the children safe from the mother's continued use of methamphetamine.

Although the father was quick to explain that his use of methamphetamine in April was not a "relapse" as he had not used it before, it is nonetheless disturbing that the father chose to use the drug for the first time while on parole and while working to have his children returned to his care. We are also concerned by the father's lack of insight into why he tried the drug; he testified, "Well, you know, I

---

[6] The court also found domestic violence as a "presenting issue" preventing the return of the children to the father's care. These parents have a history of domestic violence, but it appears these events are a number of years old, and it did not seem to be a focus of DHS when providing services to the parents. We agree with the father that domestic violence is not one of the issues preventing the return of K.W. and J.W.

don't understand why I did it either. I was at a friend's house, and it was available. I still have asked myself several times why I did it. I don't know. I don't know why I did it. It was stupid on my behalf."

The father contends the children can be returned to his care to live with him and the mother because he can keep the children safe from the drug-addicted mother, but the father has shown that he too may turn to drugs in times of uncertainty or anger. Additionally, while the father and his therapist created a safety plan whereby the father would ask the mother to leave the home if she used methamphetamine—or call the police if necessary to have her removed—we have doubts the father is able or willing to know when the mother has been using. According to reports, the father was angered and surprised when the mother admitted to her probation officer that she had used methamphetamine in March. At the termination hearing, when asked questions about the mother's sobriety, including whether she had been attending treatment or performing drug tests as she was supposed to, the father stated, "I don't try to pry that much." When it was pointed out that he would need to "pry" in order to keep the children safe, he testified, "Yeah. I think it's important. But with our relationship, you know, it's been rocky. I don't try to control no more. I don't try to be the head of the house anymore." He later went on to state, "I mean, what am I going to do? Drag her down there and tell her to drop a UA? What I can do? I mean, I'm just curious. You're asking me the question. I don't know what I will do."

The father also claims the court was wrong to conclude he lacked stability. We disagree. The parents have reported struggling to make rent throughout the proceedings, and neither has been consistently employed. The father testified he

works enough odd jobs to pay rent and buy food, but it is not clear that he has the resources to do so when considering the full-time responsibility and costs associated with two children. We also have concerns about the father's criminality as it relates to his stability. Not only did the father testify that he has spent "probably 30 years, off and on" in jail and prison, he also made a comment to the FSRP worker that he would "wave a gun in someone's face to get money for a lawyer" if he needed to.

We agree with the juvenile court that K.W. and J.W. could not be returned to the father's care.

Next, the father argues that termination of his parental rights was not in the children's best interests. In doing so, he makes the same argument the mother made—relying on the permissive factors of subsection 232.116(3) and stating that the objection by the children over ten, *see* Iowa Code § 232.116(3)(b), and the strong parent-child bond, *see id.* § 232.116(3)(c), should prevent termination of his parental rights. Although the children have objected to termination of their parents' rights, we do not believe the record supports the assertion the children are so bonded to the father as to be harmed by termination. As stated above, the father has spent a number of years of his children's childhoods in jail and prison— including time during these proceedings. DHS was involved with the family for approximately a year before the father was able to start having visits with the children again. Additionally, as indicated in the therapist's notes above, while K.W. has expressed his desire to live with his biological parents, he has also "appeared to accept that he may not live with his parents and he has recognized his foster family as positive supports."

Finally, the father contends the court should have considered placing the children in a guardianship rather than terminating his parental rights. Guardianships are not legally preferred to the termination of the parent's rights. *See In re L.M.F.*, 490 N.W.2d 66, 67–68 (Iowa Ct. App. 1992) (stating that placement of children pursuant to permanency orders is not a legally preferential alternative to terminating parental rights when there is sufficient evidence to terminate). Also, the father has not—before the juvenile court or here on appeal—stated who he thinks should be the guardian for the children. DHS sent out family letters early on in the proceedings to see if anyone was able and willing to care for the children while the parents were not, and no family member came forward. Without a person willing to take on a guardianship, we cannot say the court made a mistake in failing to consider the option.

For all the foregoing reasons, we affirm the termination of the parental rights of J.W. and K.W.'s father.

### C. Children's Appeal.

All three children appeal the termination of their mother's parental rights and K.W. and J.W. appeal the termination of their father's parental rights.[7] The children first contest the proof for the statutory grounds for termination, but they do not have standing to argue the statutory grounds were not proven. *See G.S.*, 2013 WL 4774040, at *4 (citing *In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007); *In re D.G.*, 704 N.W.2d 454, 459 (Iowa Ct. App. 2005)).

---

[7] The children's appellate brief does not distinguish which children appeal the ruling as to each parent, but we note D.S. does not have standing to appeal the termination of the parental rights of the father to K.W. and J.W.

The children's second argument maintains termination is not in their best interest and argue—as the parents have done—that we should apply section 232.116(3)(b) and (c) to save the parent-child relationships. The children offer only conclusory statements about their bonds with their parents and the fact they have objected. The record does not contain facts supporting their argument that termination of parental rights is not in the best interests of any one of the children, who have differing circumstances, ages and needs.

We take the children's objection seriously and give it weight in reaching this decision, but as our statute requires, the children's "safety," "the best placement for furthering the long-term nurturing and growth of the child[ren]," and "the physical, mental, and emotional condition and needs of the child[ren]" must be our polestar. *See* Iowa Code § 232.116(2). Having carefully considered the record and each party's position, we reach the same conclusion as the juvenile court—termination of the mother's and the father's parental rights is in the best interests of these children.

**AFFIRMED ON ALL APPEALS.**