# IN THE COURT OF APPEALS OF IOWA

No. 18-1028
Filed September 12, 2018

**IN THE INTEREST OF M.M.,**
**Minor Child,**

**M.G., Mother,**
        Appellant,

**D.G. and J.G., Intervenors,**
        Appellants.
_____

Appeal from the Iowa District Court for Woodbury County, Mary L. McCollum Timko, Associate Juvenile Judge.

The mother appeals from the termination of her parental rights pursuant to Iowa Code chapter 232 (2017). **AFFIRMED ON BOTH APPEALS.**

Zachary S. Hindman of Mayne, Hindman & Daane, Sioux City, for appellant mother.

John S. Moeller of John S. Moeller, P.C., Sioux City, for appellants intervenors.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Lesley D. Rynell of Juvenile Law Center, Sioux City, guardian ad litem for minor child.

Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**McDONALD, Judge.**

Michelle appeals from an order terminating her parental rights in her daughter M.M. pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2017). Jill and David, Michelle's parents and M.M.'s grandparents, as intervenors, appeal the juvenile court's order appointing the Iowa Department of Human Services (IDHS) as M.M.'s guardian. M.M.'s father, Seth, does not appeal the termination of his parental rights.

This court reviews termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework authorizing the termination of a parent-child relationship is well established. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (setting forth the statutory framework). The burden is on the State to prove by clear and convincing evidence (1) the statutory ground or grounds authorizing the termination of parental rights and (2) termination of parental rights is in the best interest of the child. *See In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

We first address Michelle's claims on appeal. She challenges the sufficiency of the evidence supporting the statutory grounds authorizing the termination of her parental rights. Where, as here, "the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Our review focuses on Iowa Code section 232.116(1)(h). Michelle contests only the fourth element, which requires "clear and convincing evidence the child[] would be exposed to an appreciable risk of

adjudicatory harm if returned to the parent's custody at the time of the termination hearing." *In re E.H.*, 2017 WL 2684420, at *1.

IDHS became involved with this family in April 2016 due to the risk of harm created by the father's use of methamphetamine while caring for the child. At that time, Michelle and Seth were living with Jill and David, Michelle's parents. Michelle and Seth agreed to a safety plan, including a provision that Seth would not be left alone with M.M. Initially, Michelle and Seth were compliant with services, including substance-abuse treatment. However, things changed in October 2016. At that time, Seth was arrested for driving under the influence and was found in possession of methamphetamine and paraphernalia. Nonetheless, the child was left in the custody of the parents subject to restrictions on Seth's supervision of the child.

The child was removed from Michelle and Seth's care in the spring of 2017. In February 2017, the parents moved from the grandparents' house into their own apartment without informing IDHS. The child was still in their care at this time. When IDHS learned of the move, IDHS instructed Seth to leave the home because he was not complying with his substance-abuse treatment. In March 2017, the family's case manager learned Seth was found at the apartment without approval, both parents were there with the child, and the parents were apparently under the influence of controlled substances. The child was removed from the parents' care at this time, placed in the custody of IDHS, and placed in the physical care of Jill and David.

The child was removed from the physical care of the grandparents approximately six months later due to the grandparents' inability to protect the child

from the risk of harm. The record reflects that after the child was removed from Seth and Michelle's care, Michelle was allowed to move back into Jill and David's home subject to restrictions on her ability to provide care for M.M. unsupervised. In August 2017, the police were dispatched to the grandparents' home due to Michelle's conduct. Michelle had consumed roughly a pint of whiskey in less than one hour. The grandparents knew Michelle had been drinking but left M.M. in her care because they had to run some errands. While Jill and David were gone, Michelle assaulted her younger sibling, who was also living in the house, caused significant property damage to the home, and fled the scene. The younger sibling called Seth to come and take M.M. Approximately one month later, another incident occurred in which Michelle was acting strangely. At that point in time, the juvenile court determined the grandparents were not able to establish appropriate boundaries with Michelle to keep M.M. safe. The child was removed from the grandparents' care and placed in foster care.

Upon de novo review, we conclude the State satisfied the statutory requirements set out in Iowa Code section 232.116(1)(h). Although Michelle has been advised she must discontinue her relationship with Seth, she has not done so. An IDHS social worker, familiar with both Seth and Michelle, saw the two together just weeks prior to the termination hearing. Michelle denied the encounter, but she has a history of untruthfulness with IDHS. Additionally, Michelle is pregnant with Seth's child and maintains contact with Seth's mother. Michelle's exposure of the child to Seth and other known substance abusers creates a risk of adjudicatory harm to the child. *See, e.g.*, *In re J.C.*, No. 17-0750, 2017 WL 3283395, at *2 (Iowa Ct. App. Aug. 2, 2017) (considering mother's continued

association with a drug user as a factor supporting termination); *In re I.M.*, No. 16-0685, 2016 WL 4036256, at *1 (Iowa Ct. App. July 27, 2016) (collecting cases considering parent's continued relationship with harmful paramours).

In addition to the risk created by the father, Michelle also has not adequately addressed her own substance-abuse and mental-health needs. As noted above, Michelle has a history of alcohol abuse and erratic conduct arising from the same. She also failed to attend her mental-health treatment even though she had signed an attendance contract regarding the same. Michelle's failure to address her substance-abuse and mental-health needs supports the termination of her parental rights. *See In re M.W.*, 876 N.W.2d 212, 223 (Iowa 2016) (concluding child could not be returned when mother minimally addressed her mental-health issues); *In re R.J.*, 436 N.W.2d 630, 635–36 (Iowa 1989) (noting recent, minimal attempts to address alcohol abuse are not sufficient); *In re T.P.*, 757 N.W.2d 267, 271 (Iowa Ct. App. 2008) (noting children could not be returned to mother who failed to comply with recommended mental-health services).

At the time of the termination hearing, Michelle was not able to take physical care of the child. The record reflects Michelle was chronically unemployed and lacked stable housing and shelter. She had been moving from place to place. Immediately prior to the termination hearing, she was living with Seth's mother, a known methamphetamine user, in a one-bedroom apartment. The mother's inability to maintain regular employment and stable housing also militates in favor of terminating her parental rights. *In re L.B.*, No. 18-1017, 2018 WL 3650370, at *1 (Iowa Ct. App. Aug. 1, 2018) (collecting cases concluding a lack of employment and housing demonstrates the inability to provide care for the child).

The risk of harm posed to the child by Michelle is heightened due to the child's significant medical needs. *See In re D.S.*, 806 N.W.2d 458, 473 (Iowa 2011) (noting child's advanced medical needs when considering termination). M.M. was born with a cleft palate and significant hearing loss. She is deaf in one ear. These medical conditions require regular medical intervention and greater parental involvement to ensure the child develops appropriately. In the past, Michelle was unable to consistently take M.M. to her required medical appointments. She did not make M.M. consistently wear her hearing aids. Michelle's failure to be attentive to her child's medical needs has resulted in delayed speech development. Since the child has been in the care of the foster parents, who have dedicated the time and attention the child needs, the child has made significant strides.

While Michelle did make some progress late in the case, it was not enough to demonstrate the capacity to care for the child without exposing the child to adjudicatory harm. Like the juvenile court, we conclude Michelle's efforts are too little too late. *See In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000) (noting parent's delayed efforts were insufficient); *In re A.E.*, No. 16-0510, 2016 WL 3271887, at *3 (Iowa Ct. App. June, 15, 2016) (collecting cases noting last-minute efforts are not reliable). We affirm the termination of Michelle's parental rights pursuant to Iowa Code section 232.116(1)(h).

We next address the intervenors-grandparents' appeal. Jill and David argue the juvenile court erred in placing custody of M.M. with the IDHS instead of them. Iowa Code section 232.117(3)(c) permits placement of the child with "other relative[s]" upon termination of a parent's parental rights. However, when considering a child's post-termination placement, "there is no statutory preference

for placement with a relative." *See In re A.S.*, 906 N.W.2d at 477. Jill and David's history with M.M. provides insight into how they are likely to care for her in the future. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 43 (Iowa 2015) ("The past is prologue. The best predictor of what someone will do tomorrow is what he or she did yesterday."). Jill and David have not acted in the protective capacity required of them to care for M.M. For example, they could smell alcohol on Michelle's breath the day she trashed their home and assaulted her sister, yet they made the decision to leave M.M. with Michelle knowing she had been drinking. Like Michelle, Jill and David failed to take the child to required medical appointments. Like Michelle, Jill and David failed to require M.M. wear her hearing aids. Finally, their judgment as it relates to establishing protective boundaries is suspect. When Michelle was sixteen, they allowed Seth to move into the family home and live with her even though he was an adult. After Seth tested positive for methamphetamine, they allowed him to remain in the home and around their daughters and granddaughter. David acknowledged these shortcomings at the termination hearing, stating, "I ask myself the different mistakes that Jill and I have made through all of this. I ask myself every day what I could have been thinking. What I was thinking about. To tell you the truth, I don't have any answer. It just kills me." We conclude the juvenile court did not err in placing custody and control of M.M. with IDHS.

**AFFIRMED ON BOTH APPEALS.**