# IN THE COURT OF APPEALS OF IOWA

No. 21-0034
Filed September 1, 2021

**IN THE INTEREST OF E.E.,**
**Minor Child,**

**N.S., Mother,**
    Petitioner-Appellee.

**A.E., Father,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Hardin County, Paul G. Crawford, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Dana A. Judas of Nazette, Marner, Nathanson & Shea LLP, Cedar Rapids, for appellant father.

Jason S. Rieper of Rieper Law, P.C., Des Moines, for appellee mother.

Justin T. Deppe of Deppe Law Office, Jewell, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**BOWER, Chief Judge.**

A father appeals the termination of his parental rights under Iowa Code chapter 600A (2020). The father asserts the mother did not establish he abandoned the child, termination is not in the child's best interests, and his trial counsel provided ineffective assistance. We affirm the juvenile court and deny the father's additional request for appellate attorney fees.

**I. Background Facts & Proceedings.**

N.S. (mother) and A.E. (father) are the biological parents of E.E., who was born in January 2016. In the summer of 2016, the parents separated due to the father's substance abuse and domestic-abuse assaults on the mother. The child stayed with the mother.

The mother began a relationship with her present spouse in 2017, and they married in 2019. Her husband seeks to adopt the child.

In 2017, the mother obtained a custody order awarding her legal custody and physical care of the child, with the father's visitation at her discretion. The father was ordered to pay $250 per month in child support.[1] In those proceedings, the father did not appear at court-ordered mediation, a children-in-the-middle class, or the custody hearing. All child-support payments the father has made have been garnishments from his wages, tax refunds, and unemployment benefits—he has never made a voluntary payment nor has he made payments on the arrearage.

---

[1] The court viewed the monthly payments "as less than his child support would be under the Iowa Supreme Court guidelines."

The father has struggled with drug addiction for fifteen years; his drug of choice is methamphetamine. He testified his longest period of sobriety since the child was born was seven or eight months in late 2019 and early 2020 when he was living in a halfway house.[2] The father has pleaded guilty to committing five different criminal offenses during the child's short life, spending significant time in jail and on probation. In March 2020, about two months after leaving the halfway house, the father relapsed. His probation terms were modified in September to require the successful completion of drug treatment.

Throughout the child's life, the father's visitation has been sporadic at best and depended on his sobriety at the time. The visits were usually supervised by his mother, sister, or sister-in-law and often occurred around the holidays. Many visits were coordinated to happen at the same time as the father's visits with his older child. The father's family would keep the mother informed of the father's current sobriety status. The father celebrated Thanksgiving and Christmas 2019 and the child's birthday in January 2020 with E.E. and the father's family.

In August, the mother filed a petition to terminate the father's parental rights pursuant to Iowa Code sections 600A.5 and 600A.8 (2020). The mother alleged the father has abandoned the child by "not having maintained any substantial, continuous, or repeated contact with the minor child and failure to contribute to the financial needs of the minor child, as contemplated by Iowa Code [section] 600A.8(3)(b)."

---

[2] The father lived in the halfway house after successfully completing his fifth inpatient-treatment program.

The father has not had any contact with the mother or child since February 2020. He did not see the child, call, send letters, or attempt any other sort of contact. At the termination hearing, the mother and her spouse testified the child had not asked about the father for several months.

In September, the father entered an inpatient-treatment program as a condition of his probation, successfully completing it in October. He was scheduled to move into a sober living facility the day after the termination hearing. Just before entering treatment, the father reinitiated contact with his older child but not with E.E. He indicated he did not know if it would be beneficial to reach out to E.E.'s mother and it was hard to get ahold of her.

The juvenile court found the mother established by clear and convincing evidence that the father abandoned the child as defined under Iowa Code section 600A.8(3) because he failed "to contribute to the support of the child in a reasonable amount and . . . visit the child at least monthly when physically and financially able to do so, or regularly communicate with the child." The court also concluded termination of the father's rights was in the child's best interests.

The father appeals, asserting the mother did not establish abandonment and termination of his parental rights is not in the child's best interests. The father also asserts his trial counsel provided ineffective assistance by failing to raise violations of the Iowa Rules of Civil Procedure and failing to present witnesses and adequate evidence to the court. The father also requests an award of appellate attorney fees.

**II. Standard of Review**

"Private termination proceedings under chapter 600A are reviewed de novo." *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020).

**III. Analysis.**

**A. Grounds of termination.** Termination of parental rights under Iowa Code chapter 600A requires a two-step analysis. *In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018). First, "the petitioner seeking termination must first show by clear and convincing evidence a threshold event has occurred that opens the door for potential termination of parental rights." *Id.* "Once that threshold showing has been made, the petitioner next must show by clear and convincing evidence termination of parental rights is in the best interest of the child." *Id.*

*Threshold Event.* The juvenile court may terminate a parent's rights if they have abandoned the child. Iowa Code § 600A.8(3). "To abandon a minor child" means a parent "rejects the duties imposed by the parent-child relationship, . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." *Id.* § 600A.2(20).

Section 600A.8(3)(b)(1)-(2) clarifies a parent is deemed to have abandoned a child over six months of age:

> unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and

> financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

The subjective intent of the parent, unless supported by actions manifesting that intent, "does not preclude a determination that the parent has abandoned the child." *Id.* § 600A.8(3)(c).

The father asserts from February 2020 through the termination hearing at the end of November, he was physically incapable of maintaining contact with the child due to his methamphetamine addiction and it would be inappropriate to visit the child while using drugs. While it may have been inappropriate to visit the child, the father did not attempt other communication or contact with the child or the mother during this period—or even before his most recent relapse. The father's financial support for the child is only because of the mother's efforts to establish a custodial order and the State's enforcement of the financial provisions therein, not due to any assumption of duty by the father.

A father's attempts to shield a child from addiction "do[es] not justify or overcome his failure to maintain a relationship with his child." *In re C.M.*, No. 18-1901, 2019 WL 3315891, at *2 (Iowa Ct. App. July 24, 2019); *see also In re G.A.*, 826 N.W.2d 125, 129 (Iowa Ct. App. 2012) ("The father must take personal responsibility for his own wrongful and criminal acts, and cannot use such acts as a justification for his lack of relationship with the child."). The father failed to manifest an intent to act as parent of the child and has failed to fulfill the duties of a parent.

*Best Interests.* The father's best-interests argument concentrates on what he terms a "limited best interest analysis" in the juvenile court order; he does not

provide an affirmative argument termination of his parental rights is not in the child's best interests.

"The Iowa legislature requires the best interest of the child to 'be the *paramount consideration* in interpreting' the private termination of parental rights. *B.H.A.*, 938 N.W.2d at 232 (quoting Iowa Code § 600A.1). A child's best interests "requires each biological parent affirmatively assume the duties encompassed by the role of being a parent." Iowa Code § 600A.1. These duties include assuming the financial obligations, demonstrating continued interest in the child, making efforts to maintain communication, as well as establishing and maintaining a place of importance in the child's life. *Id.* We also consider the child's safety and the best placement for the nurturing and growth of the child. *B.H.A.*, 938 N.W.2d at 232. And we consider the child's immediate and long-range interests. *Id.* at 232–33.

On our de novo review, we find the father made no effort to act as a parent and assume the rights and duties attendant with parenting the child. He had limited contact with the child and made little effort to know or take care of the child. Instead, he left the care of the child entirely to the mother while he cycled through criminal charges, addiction relapse, and treatment. His attempts at treatment were in response to court requirements to stay out of prison, not out of a desire to parent the child. Even his financial support is due to the mother's actions and not his own.

In contrast, the mother's spouse plays an active part in the child's life and wants to adopt the child. We find the mother established by clear and convincing evidence that terminating the father's parental rights is in the child's best interests.

We affirm the termination of the father's parental rights.

**B. Ineffective Assistance of Counsel.** The father claims his counsel provided ineffective assistance by failing to ensure proper service of the petition for termination, timely file exhibits and adequately examine the witnesses during trial, and call additional witnesses on his behalf.[3]

> Termination of parental rights cases are civil proceedings. As no Sixth Amendment protections are implicated, there is no constitutional right to effective assistance of counsel. Nevertheless, due process requires that counsel appointed pursuant to a statute provide effective assistance. We generally apply the same standards for counsel appointed in a criminal proceeding to counsel appointed in a termination proceeding.

*In re T.P.*, 757 N.W.2d 267, 274 (Iowa Ct. App. 2008) (citations omitted). The father had appointed counsel at the district court, so his claim falls within the parameters of *T.P.*, and he had a right to effective assistance from his appointed counsel. Direct appeal is the only way to address a claim of ineffective assistance because termination-of-parental-rights proceedings have no procedural equivalent to postconviction relief. *In re J.P.B.*, 419 N.W.2d 387, 390 (Iowa 1988).

"In order to establish an ineffective assistance claim, it must be shown that (1) counsel's performance is deficient, and (2) actual prejudice resulted. We presume that counsel's conduct falls within the range of reasonable professional competency. The burden of proving ineffectiveness is on the claimant." *In re A.R.S.*, 480 N.W.2d 888, 891 (Iowa 1992) (citations omitted).

*Service.* When filing the petition to terminate the father's rights, the mother also filed a "Motion for alternate service" requesting to serve the father via Facebook Messenger as his address was otherwise unknown. An August 30 court

---

[3] The mother did not address this issue on appeal.

order stated, "Court grants Petitioner's request for alternate method of service. Since she does not know father's exact whereabouts, mother can serve him by publication." Days later, the mother's counsel filed an affidavit of service stating the petition had been served via Facebook Messenger, but the affidavit simply showed counsel sending the message; it did not include proof the father received the notice. Approximately two weeks later, the father filed an application for appointment of counsel with the court.

Notice requirements for the termination of parental rights hearing under Iowa Code chapter 600A are clearly laid out in section 600A.6. Generally, publication is achieved by personal service as described in Iowa Rule of Civil Procedure 1.305, or by certified mail restricted delivery. Iowa Code § 600A.6(4). Here, the juvenile court allowed the mother to serve via publication. Section 600A.6(5) specifies notice by publication is achieved by publishing "once a week for two consecutive weeks in a medium which is reasonably expected to provide notice to the necessary party." Service via Facebook Messenger does not fall within the service alternatives of the rules of civil procedure or section 600A.6.

"Where notice is required, actual notice is insufficient." *In re Guardianship of M.M.*, No. 15-1104, 2016 WL 4801508, at *3 (Iowa Ct. App. Sept. 14, 2016); *see In re J.R.H.*, No. 05-0610, 2005 WL 1398586, at *1 (Iowa Ct. App. June 15, 2005) ("The fact that a parent may be aware of the legal proceedings through informal sources does not relieve the State of its obligation to provide formal notification of the child-in-need-of-assistance proceedings."). That said, "Where a party consents to an action by his presence and silence, he is estopped from later

challenging the validity of the proceedings." *In re J.F.*, 386 N.W.2d 149, 152 (Iowa Ct. App. 1986).

The service of notice in this case was insufficient. The father's counsel failed an essential duty in not bringing the deficient notice to the court's attention once appointed. However, the father fully participated in the proceedings represented by counsel, and he has not demonstrated prejudice resulting from the deficient service.

*Exhibits and witnesses.* The father also asserts counsel failed a duty by not timely submitting exhibits and calling witnesses with knowledge of his progress in his substance-abuse treatment and probation. The father also claims counsel was deficient in questioning him and cross-examining the mother and her spouse.

We presume counsel performs their duties competently. *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012). However, "[c]ompetent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." *Id.* at 496 (quoting Iowa R. of Prof'l Conduct 32:1.1). A lawyer cannot be half-hearted in applying their energies to a case. *Id.* at 495.

The father's representation by trial counsel appears to have been half-hearted at best. Counsel filed nothing—including a proposed exhibit or witness list—before the termination hearing itself. Counsel asked minimal questions of both the father and mother, none directed at eliciting positive aspects of the father-child relationship. Counsel did little to develop any positive aspects of the father's case or redeeming elements that might persuade the court termination of his parental rights was not in the child's best interests. Counsel failed his essential duty to advocate for the father.

Having found the father established counsel's performance was deficient, we turn to the prejudice question. The father needs to demonstrate actual prejudice: that the result of the proceeding would likely have been different but for counsel's errors—i.e., but for counsel's errors, the court would not have terminated the father's parental rights. *See T.P.*, 757 N.W.2d at 275. We analyze all claims individually and cumulatively to determine whether prejudice has been established. *See Clay*, 824 N.W.2d at 500.

The father cites no facts or evidence to show how counsel's failures in performance affected the court's threshold event determination—the father abandoned the child. Therefore, we ask whether, but for counsel's failures, the court would have found termination was not in the best interests of the child.

When asked directly why it would be in the child's best interests to not terminate his parental rights, the father answered, "I believe it is every child's given right to have biological parents involved in their life. Your Honor, it takes—you know, faults of my life. I am working through my faults, but to just terminate rights without trying alternate sources is not fair, in my opinion." He makes no further arguments regarding the child's best interests on appeal.

The father's lack of involvement or attempts to parent throughout the child's entire life are the result of his own choices and actions. The father's testimony showed a failure to assume almost all duties encompassed in the role of a parent. We find nothing in the record or the father's arguments to support a finding that competent counsel would have established termination was not in the child's best interests. Under all the facts of this case, we do not find the father demonstrated prejudice affecting the results of the proceeding due to counsel's failures. Because

he has failed to establish prejudice, his ineffective-assistance-of-counsel claim fails. *See T.P.,* 757 N.W.2d at 275–76.

**C. Appellate Attorney Fees.** The father requests an award of appellate attorney fees, citing a dissolution of marriage case as authority. He does not cite any authority for the award of appellate attorney fees for private counsel under Iowa Code chapter 600A.

Iowa Code section 600A.6B governs the payment of attorney fees in a private termination action, but it only applies to appointed counsel and does not mention private counsel. The statute provides,

> If the parent against whom the petition is filed appeals a termination order . . . , the person who filed the petition or the person on whose behalf the petition is filed shall not be responsible for the payment of attorney fees for services provided by counsel appointed . . . in the appellate proceeding. Instead, the appointed attorney shall be paid reasonable attorney fees as determined by the state public defender from the indigent defense fund . . . .

Iowa Code § 600A.6B(4). Not only is there no statutory authorization for the shifting of private attorney fees, but the statute expressly prohibits shifting the appellate appointed attorney fees when the appeal is brought by the terminated parent. The father cannot circumvent this prohibition on fee-shifting by hiring private counsel for the appeal instead of having appointed appellate counsel.[4] We deny the father's request for appellate attorney fees.

**AFFIRMED.**

---

[4] The court initially appointed appellate counsel and ordered the cost of the transcript be paid at public expense. The court expressly noted in the order the mother was not responsible for appellate attorney fees under section 600A.6B(4). One week later the father hired private counsel.