# IN THE COURT OF APPEALS OF IOWA

No. 18-0855
Filed September 12, 2018

**IN THE INTEREST OF A.S., T.S., and K.R.,**
**Minor Children,**

**A.R., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother appeals the juvenile court's termination of her parental rights.

**AFFIRMED.**

Laura J. Lockwood of Hartung & Schroeder, LLP, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, guardian ad litem for minor children.

Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

A mother appeals the termination of her parental rights. We find termination is in the children's best interests. We affirm the decision of the juvenile court.

## I.     Background Facts & Proceedings

A.R. is the mother of A.S., born in 2007; T.S., born in 2009; and K.R., born in 2014. R.S. is the father of A.S. and T.S. D.R. is the father of K.R.

In 2016, the mother began using controlled substances in the home, following several years of sobriety.[1] On September 30, 2016, the mother took the oldest child to a house which had just been subject to a police search yielding significant quantities of controlled substances. The mother was searched on the scene and found to be in possession of controlled substances. Law enforcement arrested the mother and contacted the Iowa Department of Human Services (DHS), which took custody of A.S. An order for temporary removal was requested and granted for all three children.[2] The children were placed with a maternal aunt and uncle. The court ordered drug screens of the children, and K.R. tested positive for the presence of illegal drugs.

On November 28, the court adjudicated the children as in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(c)(2), (n), and (o) (2016), and ordered supervised visitation and Family Safety, Risk, and Permanency (FSRP) services. In late December, the children were moved from

---

[1] A.S. and T.S. had previously been removed from A.R.'s care in 2011 due to the mother's failure to supervise and continued contact with an individual who had sexually abused one of the children. The mother successfully completed an outpatient substance-abuse treatment program. The case was closed, and the children returned to the mother's care in 2012.

[2] At the time of removal, R.S. was incarcerated by the State of Iowa for a drug conviction, and D.R. was in federal prison on drug charges.

their maternal aunt and uncle's home to their maternal grandfather's home. At a January 2017 disposition hearing, the court found the children's caretakers were not following the court's orders, including therapy for the children, and modified their placements. A.S. and T.S. were placed with a foster family, and K.R. was placed with the paternal grandmother. All three children began therapy.

Between October 2016 and October 2017, the mother entered eight different treatment programs. The mother successfully completed two intensive treatment programs, but failed to complete aftercare. The mother requested a transfer of the CINA case to the recovery court program in February 2017, but was unsuccessfully discharged for missing drug screens and being non-compliant. The mother was inconsistent in her interactions with the children prior to a treatment program she began in October 2017. She struggled to reach her visitations on time, and sometimes did not appear. Prior to her last inpatient treatment program, the mother's periodic drug tests sometimes came up positive, sometimes negative, but were almost all provided days after the request from DHS or her treatment programs.

R.S. was released from prison at the beginning of October 2016. He demonstrated progress in addressing his substance-abuse issues in late 2016 and early 2017. Beginning in spring 2017, DHS allowed R.S. extended and unsupervised visits with A.S. and T.S. By September, the children were allowed to stay overnight with their father, and the mother would visit them at the father's home. In September, the father requested a modification of placement to move the children to his care. At his next drug screen, the father tested positive for

controlled substances. He relapsed into addiction and ceased any visitation or contact with the children.

The court held a permanency hearing on September 15, October 19, and November 1, 2017. In a pre-hearing report, DHS recommended a six-month extension for the mother to demonstrate successful completion of treatment, with the fathers as an alternate placement. The guardian ad litem for the children recommended termination of the mother's rights. On September 15, the first day of the hearing, both the parents tested positive for controlled substances. In October, the mother entered an inpatient treatment program, which she was still in at the time of trial. However, the court found that due to the mother's lack of progress and the father's relapse and lack of recent contact, the permanency goal for the children would be changed to termination.

On December 11, the State filed a petition to terminate the parents' rights. The court reunited the siblings in January by placing K.R. with the same foster family as A.S. and T.S.

On January 5, 9, 19, and February 7, 2018, the court held a termination hearing. The court heard testimony from R.S.,[3] the mother, therapists for A.S. and T.S., the FSRP and DHS workers, and personnel from the treatment facility the mother was in at the time. The court also spoke with A.S. and T.S. R.S. admitted to relapsing into heavy drug use and testified he could not resume custody of the children at that time. Both therapists expressed a need for the mother to be successfully sober in the community prior to reunification. The mother and the

---

[3] R.S. only appeared the first day of the hearing.

personnel from her treatment center testified about the types of treatment and therapy she had been participating in since October 2017. A.S. and T.S. did not express to the court a desire to be reunified with the mother.

The court, prior to its ruling, was informed that on March 3, 2018, the mother left her inpatient treatment program without discussing her departure with any of her counselors or center staff members. Up until her departure, the mother's treatment was going well. The program discharged her with a "maximum benefit discharge."

On April 30, the court terminated the mother's parental rights to the children under Iowa Code section 232.116(1)(f) and (h) (2017).[4] The mother appeals.

## II. Standard of Review

The scope of review is de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Clear and convincing evidence is needed to establish the grounds for termination. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Where there is clear and convincing evidence, there is no serious or substantial doubt about the correctness of the conclusion drawn from the evidence. *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). The paramount concern in termination proceedings is the best interests of the child. *In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003).

## III. Reasonable Efforts

The mother claims to have been denied reasonable efforts toward reunification. Iowa requires DHS make every reasonable effort to return children

---

[4] The juvenile court terminated the rights of R.S. under Iowa Code section 232.116(1)(e) and (f). R.S. filed a timely notice of appeal, but failed to file a petition on appeal. The supreme court dismissed R.S.'s appeal on June 6, 2018. The juvenile court terminated the rights of D.R. under Iowa Code section 232.116(1)(e) and (h). D.R. did not appeal.

to the parents consistent with the best interests of the child. Iowa Code § 232.102(7); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The State must show reasonable efforts have been made to reunify the children with the parent. *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017). However, the parent has a responsibility to object to inadequate services early enough for changes to be made, and must request the additional services at the proper time. *Id.* at 839–40. The proper time for a challenge to services provided includes at the removal, the entry of a permanency plan, and later review hearings, and must be made to the court. *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). The reasonable efforts required are those designed to eliminate the cause of the removal and allow children to safely return to the parent's care. *C.B.*, 611 N.W.2d at 493.

The mother now claims she was denied a number of services, but only informed the court of claims regarding the frequency and location of visitations, and desire for more frequent DHS staffing meetings. Any other reasonable efforts claims are waived. The mother's FSRP-supervised visits with the children were limited by her failures to confirm visits or to appear on time for visits, and were located proximate to the children's location. The requirements for confirmation and cancellations were reasonable given the mother's history of missing visits throughout the CINA proceedings. We also note the mother regularly visited the children with the father or K.R.'s relative placement in addition to the State-supervised visits. The mother continued to meet with the DHS worker the months professional staffing meetings were not available, and the mother continued to receive services.

The court and DHS were clear from the beginning of the CINA proceedings that reunification required the mother be substance free, address her mental-health issues, and have a safe and stable home for the children. The juvenile court found DHS offered reasonable efforts at reunification through services addressing the issues that led to the removal. We find the State made reasonable efforts to help the mother establish a home the children could be returned to consistent with their best interests.

### IV.     Sufficiency of the Evidence

The court terminated the mother's parental rights to A.S. and T.S. under Iowa Code section 232.116(1)(f), and K.R. under Iowa Code section 232.116(1)(h). Subsection (f) allows the court to terminate parental rights when the children are four years of age or older, adjudicated CINA, have been out of their parent's custody for twelve of the last eighteen months, and clear and convincing evidence exists showing the children cannot be returned to the custody of the parent. Subsection (h) applies when the child is three years old or younger, adjudicated CINA, has been out of the home for six of the past twelve months, and the child cannot be immediately returned to the parent's custody.

The threshold issues of age and CINA adjudication, and length of removal are unarguably met. All three children have been removed from the mother's care since September 30, 2016, and have not had any trial periods in her care. The mother failed to maintain a period of sobriety outside a highly structured treatment environment. The district court found the mother minimized her harmful behaviors, chose to continue negative associations, had not addressed mental-health issues known since 2011, failed to demonstrate she could maintain sobriety in the

community, and delayed engaging in recommended services until the permanency hearing. The therapists for the older two children testified it would be harmful to place the children with the mother without demonstrated sobriety in the community, which she has continuously failed to show. The State demonstrated by clear and convincing evidence that the children could not be returned to the mother's custody.

### V.    Extension

The mother requests a six-month extension to work toward reunification with the children. To extend the permanency determination, the juvenile court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). While the law requires a "full measure of patience with troubled parents," that patience is part of the process of chapter 232. *C.B.*, 611 N.W.2d at 494. The patience afforded a parent can turn into an intolerable hardship for the children. *In re S.J.*, 620 N.W.2d 522, 526 (Iowa Ct. App. 2000). An extension is appropriate if the need for removal will no longer exist at the end of the extension. *See In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

DHS recommended a six-month extension in September 2017 based on the mother's progress. That day, the mother tested positive for controlled substances, with another positive test in October when she entered treatment. After making progress in treatment, the mother left the program after the termination hearing without notifying the program or providing a plan for living in the community. Given

the mother's failure to address her substance-abuse and mental-health issues in a long-term and consistent manner in the eighteen months between initial removal and the termination order, we find no basis to conclude the need for removal would no longer exist at the end of the extension and an extension is not warranted.

## VI. Best Interests

The mother claims termination of her parental rights is not in the children's best interests. In determining children's best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2); *In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018). We consider the children's long-range as well as immediate best interests. *In re T.P.*, 757 N.W.2d 267, 269 (Iowa Ct. App. 2008). Once a ground for termination has been proven, we cannot deprive children of permanency on the hope a parent will learn to be responsible and reliable. *In re A.B.*, 815 N.W.2d 764, 777–78 (Iowa 2012).

We find termination of the mother's parental rights to be in the children's best interests. The mother waited until termination was imminent before applying herself to maintaining sobriety. Throughout the proceedings, she had continuing contact with those using controlled substances or otherwise posing a danger. She has demonstrated an inability to follow through with any of her treatment programs by continuing care and maintaining sobriety in the community. The children have expressed a desire for—and have a right to—a permanent, safe home free of controlled substances.

For the above reasons, we affirm the juvenile court's termination of the mother's parental rights.

**AFFIRMED.**