# IN THE COURT OF APPEALS OF IOWA

No. 22-0852
Filed September 21, 2022

**IN THE INTEREST OF G.T.,**
**Minor Child,**

**I.B., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Ida County, Mark C. Cord III, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Harold K. Widdison, Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Lesley D. Rynell of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor child.

Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

An incarcerated father who has never met his seven-year-old child appeals the termination of his parental rights under Iowa Code section 232.116(1)(b), (e), and (f) (2021).[1]  We review his claims de novo.  *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

The father first challenges the sufficiency of the evidence supporting each of the statutory grounds for termination.  We choose to focus on section 232.116(1)(f).  *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence.").  The father does not specify which element of this ground he is disputing, arguing instead that the State failed to show reasonable efforts at reunification.  This argument implicates the last element of subparagraph (f)—whether the child could be returned to his custody at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(f)(4); *D.W.*, 791 N.W.2d at 707.  "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent."  *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

"The services required to be supplied an incarcerated parent, as with any other parent, are only those that are reasonable under the circumstances."  *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000).  The father concentrates on contact with his child, contending "[r]easonable efforts include a visitation

---

[1] The mother, who was also incarcerated, consented to the termination of her parental rights to this child and his younger sibling by a different father.  She does not appeal.

arrangement designed to facilitate reunification," which he was not afforded. But "[w]hether visitation for an incarcerated parent should be ordered as a reasonable effort toward reunification when timely raised by the parent" depends on the circumstances of each case. *In re L.M.*, 904 N.W.2d 835, 840 n.9 (Iowa 2017). The circumstances here fit the contact the Iowa Department of Human Services eventually facilitated.

When the child was removed in April 2020, he was in the guardianship of the father of his younger sibling.[2] Having never met his biological father, the child viewed the guardian as his father. *See S.J.*, 620 N.W.2d at 525 (considering the child's bond with the incarcerated parent in determining what services are reasonable). After some initial confusion about the guardian's status in relation to the child, the department located the father and served him with notice of the proceeding while he was in jail in December 2020. From jail, the father went to prison on a parole revocation with an expected discharge date of October 2022. *See id.* (stating the length of the parent's sentence is a factor in the services to be provided). The department did not have contact with the father until he appeared for an April 2021 permanency hearing by telephone.

After that hearing, a caseworker for the department told the father she would talk to the child's foster mother about "getting [the child] involved in therapy services to be of some support and offer additional guidance on how best to begin your connection." In the meantime, the caseworker encouraged the father to "write

---

[2] That guardianship came about as the result of an earlier child-in-need-of-assistance case in a different county. The father was aware of that case and consented to the guardianship because he was incarcerated, as he has been for much of the child's life.

letters to [the child] to begin the connection process." The father agreed with that plan but only mailed the child one letter. *See C.B.*, 611 N.W.2d at 494 (examining the parent's response to the services provided). Phone calls started in February 2022, after the child was in therapy for a few months, and continued weekly until the termination hearing in March. While the child was initially open to the calls, he became resistant after the first one, when the father said he loved him. In an "All About Me" paper filled out by the child, he worried the father would take him away from his foster mother and younger brother. Given these circumstances, we find the efforts made by the department were reasonable. *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996) ("[T]he nature and extent of visitation is always controlled by the best interests of the child.").

Six more months would not have eliminated the need for removal, as the father next argues, considering he would not be released from prison until after that time expired. *See* Iowa Code §§ 232.117(5), .104(2)(b). Even then, like the mother candidly testified,

> [O]bviously—well, we're in prison. Even if . . . me or [the child's father] was able to get out today, it would still take us—you know, we would have—it's a process, you know. We would have to get stable, get a job, get a place, get him in school, you know what I mean. And it's just—yes. It is in his best interest . . . because we're not there. We can't be there, you know, by our choices, being in here.

We agree. *See In re M.M.*, No. 15-0214, 2015 WL 1332330, at *2 (Iowa Ct. App. Mar. 25, 2015) ("Children should not be forced to wait for their parent to be able to care for them, particularly when we have so little evidence to rely upon to believe the circumstances will be different in six months."). This child identifies his family as his foster mother and younger brother. *See* Iowa Code § 232.116(2)(b). He is

thriving in that adoptive placement, where he deserves to stay. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009) ("[A]t some point, the rights and needs of the children rise above the rights and needs of the parent.").

The father lastly claims the attorneys appointed to represent him were ineffective. *See In re S.D.B.*, No. 08-1334, 2008 WL 4725439, at *2 (Iowa Ct. App. Oct. 29, 2018) ("Because a parent has a statutory right to counsel in a termination proceeding, the parent is entitled to effective assistance." (citing *In re D.W.*, 385 N.W.2d 570, 579–80 (Iowa 1986)). But the father has shown no prejudice from the errors he claims the attorneys made. *See In re A.R.S.*, 480 N.W.2d 888, 891 (Iowa 1992) ("In order to establish an ineffective assistance claim, it must be shown that (1) counsel's performance is deficient, and (2) actual prejudice resulted."); *see also In re T.P.*, 757 N.W.2d 267, 275 (Iowa Ct. App. 2008) (stating that, to show prejudice, a parent needs to prove that but for counsel's alleged failures, "the result of the termination of parental rights proceedings would likely have been different"). The father filed the motions that he says his attorneys should have filed, and they were considered by the juvenile court. What's more, aside from the reasonable-efforts argument rejected above, the father did not challenge any of the elements of section 232.116(1)(f). *See T.P.*, 757 N.W.2d at 275. As a result, we find the father's ineffective-assistance claim fails.

Having considered and rejected all of the father's claims on appeal, we affirm the termination of his parental rights.

**AFFIRMED.**